KRAUSS & CO. *v.* UNITED STATES (No. 421).[1]

1. "WILLOW" DEFINED.

"Willow" is used botanically, colloquially, and commercially to describe a kind of wood.

2. ARTICLES MADE OF WOOD, PARAGRAPH 214, TARIFF ACT OF 1909.

It would seem to have been the purpose of the Congress in enacting paragraph 214, tariff act of 1909, to constitute a new class for all baskets made of any kind of wood, and instead of continuing a former provision whereby different kinds of wooden baskets should be classified differently and with differing rates of duty to make all wooden baskets dutiable at the same rate; and market baskets and hampers made of willow are dutiable not as manufactures of willow, but, according to the more specific of two possible designations, as baskets of wood and under said paragraph 214.—Zinn case (T. D. 24811) and others distinguished.

United States Court of Customs Appeals, May 1, 1911.

APPEAL from Board of United States General Appraisers, Abstract 23619 (T. D. 30754), Abstract 23756 (T. D. 30828).

[Reversed.]

*Walden & Webster* for appellant.

*D. Frank Lloyd,* Assistant Attorney General (*Edwin R. Wakefield* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

On August 25, 1909, the appellants imported into this country a consignment of willow baskets of two kinds, namely, market baskets and hampers.

The market baskets were such as are well known by that name and hardly require any further description; the hampers were upright

---

[1] Reported in T. D. 31574 (20 Treas. Dec., 957).

four-cornered baskets standing upon board bottoms, having also willow lids, and commonly used as shipping baskets or to hold soiled clothes for the laundry. The willow twigs or wands composing the baskets had been peeled but not split.

. There was no other kind of baskets in the shipment.

The collector held the importation to be dutiable at 45 per cent ad valorem as manufactures of willow, under paragraph 212, act of 1909, which reads as follows: . .

212. Chair cane or reeds wrought or manufactured from rattans or reeds, ten per centum ad valorem; osier or willow, including chip of and split willow, prepared for basket makers' use, twenty-five per centum ad valorem; manufactures of osier or willow and willow furniture, forty-five per centum ad valorem.

The appellants duly filed their protest to this assessment and contended that the baskets were dutiable at 35 per cent ad valorem as baskets of wood, under paragraph 214, which reads as follows:

. 214. Porch and window blinds, baskets, curtains, shades, or screens of bamboo, wood, straw, or compositions of wood, not specially provided for in this section, thirty-five per centum ad valorem; if stained, dyed, painted, printed, polished, grained, or creosoted, forty per centum ad valorem. . .

. The appellants included also some other claims within their protest, but all such have been withdrawn and the contention above stated is the only one upon which they rely.

The board duly heard the protest on evidence and overruled the same as to the market baskets, but sustained the same as to the hampers on the ground that they were house furniture wholly or in chief value of wood, and were therefore dutiable at 35 per cent ad valorem under paragraph 215, which reads as follows:

215. House or cabinet furniture wholly or in chief value of wood, wholly or partly finished, and manufactures of wood or bark, or of which wood or bark is the component. material of chief value, not specially provided for in this section, thirty-five per centum ad valorem.

A petition for rehearing was filed by the Government, and the board thereupon held, in effect, that their decision concerning both baskets was incorrect, and that both should be classified as willow furniture, under paragraph 212, *supra*, and were therefore dutiable at 45 per cent ad valorem. .

The appellants complain that this action of the board was taken without first giving them any kind of notice, and actually without knowledge on their part, and that the decision was therefore void for want of jurisdiction.

However, as the nominal result of the proceedings, the board held the entire importation to be willow furniture, dutiable at 45 per cent ad valorem, and the appellants contended that the articles were baskets of wood dutiable at 35 per cent ad valorem.

It seems clear that the board erred in classifying these baskets as willow furniture. The record contains all the evidence taken in the case, and the uncontradicted testimony is that the baskets were not known in trade as furniture, or as willow furniture, but only as baskets, and that they were not handled by furniture dealers, but only by merchants who dealt distinctively in baskets. The exhibits also fully sustain this testimony.

This, therefore, negatives the second finding of the board. However, it is not conclusive of the case, because the same paragraph which provides for willow furniture also provides for manufactures of willow and fixes the same rate of duty for both. The Government contends that the baskets are manufactures of willow, if not also willow furniture, and therefore that the decision of the board reaches the right result and should not be disturbed.

The case, therefore, thus assumes a new aspect and presents this secondary question: Are the baskets to be classified as baskets of wood or as manufactures of willow?

The articles may certainly be described as manufactures of willow; but if they are also baskets of wood, then and in such case that designation would prevail, since the description "baskets of wood" is obviously more specific than "manufactures of willow." The question therefore really is whether the articles are baskets of wood as well as manufactures of willow.

It is conceded that the articles are baskets, and that they are manufactured from whole willow twigs or sprouts, the hampers having board bottoms.

It can hardly be denied that willow is a kind of wood, as the two words are used colloquially, botanically, and commercially. This statement is sustained by the fact that all of these provisions appear in "Schedule D—Wood and manufactures of." The board also adopted this meaning of the words in its first decision, wherein it held that the baskets were house furniture, wholly or in chief value of wood. But the Government contends that whatever may be the meaning of the words wood and willow in other constructions, in tariff legislation the purpose is made clear that willow shall not be classed as a kind of wood, and that whenever the word wood alone is used it shall not be understood to include willow. Therefore it is argued that these baskets, although made of willow, are not baskets of wood, within the meaning of the act. This conclusion is said to follow from certain former decisions of the board and of the courts, and from a study of the changes in the tariff laws following the decisions, and from a comparison of the different parts of the act treating of this subject matter. The decisions which are thus referred to were made upon the act of 1897, before the passage of the present law. They will be briefly examined in their relation to this question.

In the first Zinn case (T. D. 24811, Nov. 27, 1903) the board held that where willow had been split by a certain process it became commercially known as chip, and ceased to be known as willow, and therefore that baskets made of such material should be classified as baskets of chip rather than as manufactures of willow.

In the second Zinn case (T. D. 27208, Mar. 13, 1906) it was stated by the board that the foregoing decision was based upon partial and incomplete evidence, and upon the evidence submitted in the case at bar it was held that baskets made from such split willow were not manufactures of chip, but were manufactures of willow, the first decision being thus overruled.

In the Ollesheimer case, Abstract 2453 (T. D. 25499, July 27, 1904), the same question was again made, and the board adhered to its second decision. This was affirmed by the circuit court (154 Fed. Rep., 167), the court saying that the case seemed to be merely an effort to relitigate the Zinn cases, and that no reason appeared for departing from the second decision. This case was further affirmed by the Circuit Court of Appeals (158 Fed. Rep., 977) upon substantially similar grounds.

In all of these cases there was but a single question made and it was largely one of fact. The act had provided separate rates of duty for manufactures of willow and manufactures of chip; and the question was which designation more properly included baskets made of split willow. The testimony related most largely to trade usage of the word "chip." There was no mention in the act of baskets *eo nomine*, whether of wood or willow; nor was the question made whether willow was or was not a kind of wood. The cases, therefore, do not seem to go very far in the direction claimed for them.

It appears that the sections relating to these and like manufactures were modified when transferred from the act of 1897 to that of 1909; and it is contended that these changes show a legislative recognition of the principles of the above cases and a purpose to enact them into statute law.

This contention does not require very extended discussion, because the cases themselves do not touch upon the question at issue, and the implied approval of them by Congress is, therefore, no authority in relation to the present question.

It is also claimed that if willow baskets were held to be baskets of wood the meaning of paragraph 212 would be largely destroyed, especially that part providing for "manufactures of osier or willow." This hardly seems to follow, for manufactures of osier or willow is a general description covering many other articles besides baskets, and to withdraw that one class of articles from its operation can not be said to destroy the meaning of the entire paragraph.

In paragraph 215 Congress made "furniture wholly or in chief value of wood" a class with 35 per cent ad valorem duty; and in paragraph 212 "willow furniture" was made a class with 45 per cent ad valorem·duty. In respect to furniture, therefore, willow furniture and furniture of wood were treated separately; but this fact does not lend very substantial support to the broad claim that Congress had adopted a nomenclature for the entire act whereby willow should be wholly taken from its genus wood.

It is rather a bold claim to make·in any case that a word used in a statute has been deprived of the meaning which is at once its common, scientific, and trade meaning and given an arbitrary one, such as can be determined only by a technical study of judicial decisions and of comparative legislative enactments. Such action is of course within legislative authority and such authority is doubtless sometimes exercised, but in this case such a conclusion does not seem to follow from the actual premises.

In the act of 1897 baskets did not appear *eo nomine.* Therefore willow baskets were held to be included within the provision for manufactures of willow, and baskets of other woods were included within the provision for manufactures of wood. It is therefore true that they were given separate classifications and different duties by that act. But this result did not follow from any language which could carry the meaning that willow was not regarded at all as wood. For it frequently happens that a class·of articles made from a given material is made an exception to the general rule adopted for such material when admittedly the class would be governed by the general rule in the absence of such a provision.

Now, if Congress had intended that the former difference should continue in the law of 1909, it is reasonable to suppose that the same language would be used. But instead of that the word "baskets" is injected into the act, in the "wood manufactures" paragraph, and not in the "willow," when plainly a large percentage of willow would be used in baskets and a large percentage of baskets would be made of willow; and when the word "baskets" as used would add nothing to the law as it stood unless it applied to willow ·baskets, as well as to those made from other kinds of wood, and when the common understanding would be that baskets of wood should include baskets of willow. This action of Congress seems to imply a purpose to establish all baskets as a new class, if made of any kind of wood, and to make them all dutiable at the same rate, instead of continuing the former provision whereby different kinds of wooden baskets should be classified differently.

According to this view the importation is more specifically described as baskets of wood, and the protest should have been sustained.

This conclusion makes it unnecessary to consider the question of practice raised in relation to the rehearing had by the board without notice to the appellants.

The decision of the board is therefore *reversed*.