UNITED STATES *v.* SNOW'S UNITED STATES SAMPLE EXPRESS CO. (No. 1469).[1]

SHIRT BOSOMS OF TUCKED COTTON MATERIAL.

These shirt bosoms are precisely and more specifically described by the term "wearing apparel composed of cotton or of cotton in chief value made up or manufactured in part" (paragraph 256, tariff act of 1913) than they are by the term "articles made up in part of tuckings of whatever yarns, threads, or filaments composed" (paragraph 358 of that act). The required attributes of wearing apparel most closely describe and identify the goods, and they are dutiable as such under paragraph 256.

United States Court of Customs Appeals, May 3, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7613 (T. D. 34823).

[Affirmed.]

*Bert Hanson*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel; *Thomas J. Doherty*, special attorney, on the brief), for the United States. *Allan R. Brown* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The paragraphs directly involved in this case, found in the tariff act of 1913, are as follows:

256. Clothing, ready-made, and articles of wearing apparel of every description, composed of cotton or other vegetable fiber, or of which cotton or other vegetable

fiber is the component material of chief value, or of cotton or other vegetable fiber and india rubber, made up or manufactured, wholly or in part, by the tailor, seamstress, or manufacturer, and not otherwise specially provided for in this section, 30 per centum ad valorem; shirt collars and cuffs of cotton, not specially provided for in this section, 30 per centum ad valorem.

358. Laces, lace window curtains not specially provided for in this section, coach, carriage, and automobile laces, and all lace articles of whatever yarns, threads, or filaments composed; handkerchiefs, napkins, wearing apparel, and all other articles or fabrics made wholly or in part of lace or of imitation lace of any kind; embroideries, wearing apparel, handkerchiefs, and all articles or fabrics embroidered in any manner by hand or machinery, whether with a plain or fancy initial, monogram, or otherwise, or tamboured, appliquéd, or scalloped by hand or machinery, any of the foregoing by whatever name known; edgings, insertings, galloons, nets, nettings, veils, veilings, neck rufflings, ruchings, tuckings, flouncings, flutings, quillings, ornaments; braids, loom woven and ornamented in the process of weaving, or made by hand, or on any braid machine, knitting machine, or lace machine, and not specially provided for; trimmings not specially provided for; woven fabrics or articles from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving, forming figures or designs, not including straight hemstitching; and articles made in whole or in part of any of the foregoing fabrics or articles; all of the foregoing of whatever yarns, threads, or filaments composed, 60 per centum ad valorem.

The merchandise is described in the appraiser's answer to the protest as "shirt bosoms composed of cotton or flax, ornamented with loom-woven tucks, tuckings chief value." These shirt bosoms are neither embroidered nor appliquéd.

No issue of fact is involved, the only question being whether, as a matter of law, the merchandise is dutiable under paragraph 358 as an article made in whole or in part of tuckings, as assessed by the collector, or as wearing apparel made up or manufactured wholly or in part under paragraph 256, as claimed by the importers.

The Board of General Appraisers held that these shirt bosoms were partly manufactured wearing apparel, citing *In re* Mills (56 Fed., 820; T. D. 11324 and T. D. 12119). This holding is not challenged and seems to be correct. The board also found from an inspection of the sample received in evidence that they were made in chief value of a tucked cotton material, the correctness of which finding is not denied.

Before undertaking discussion of the precise issue it seems advisable to analyze paragraph 358 and to consider its origin.

With reference to the things to which it relates the paragraph naturally subdivides into the following clauses, stated in the order of their appearance therein: (1) Laces, window curtains of lace not specially provided for, and all lace articles of whatever yarns, threads, or filaments composed; (2) handkerchiefs, napkins, wearing apparel, and all other articles or fabrics made wholly or in part of real or imitation lace; (3) embroideries, wearing apparel, handkerchiefs, and all fabrics or articles embroidered, tamboured, appliquéd, or scalloped, by hand or machinery, any of the foregoing by whatever name

known; (4) edgings, insertings, ruchings, tuckings, flounces, and other similar articles, veils, veilings, nets, nettings, and ornaments; (5) loom-woven braids ornamented in the process of weaving or made by other machinery or by hand not specially provided for; (6) trimmings not specially provided for; (7) woven fabrics or articles with threads omitted, cut, drawn, or punched, having new threads introduced and containing figures or designs, as therein specified; (8) articles made in whole or in part of the foregoing fabrics or articles; (9) declares that all the foregoing of whatever yarns, threads, or filaments composed shall be assessed at 60 per cent ad valorem.

From the foregoing analysis it is apparent—

That clause 1 relates to all lace articles except window curtains specially provided for. It may therefore include articles which are, in fact, wearing apparel, as, for instance, a lace collar.

That clause 2 specifically refers to wearing apparel made wholly or in part of real or imitation lace, and to articles that are not wearing apparel. If of real lace, articles of wearing apparel would seem to be within either clause 1 or 2.

That clause 3 specifically refers to wearing apparel and other articles embroidered, tamboured, appliquéd, or scalloped, and also to embroideries, and includes any of these things by whatever name known.

That clause 4, so far as relates to veils and nets, refers to articles some of which may be wearing apparel. It also refers to other things, some of which may be wearing apparel or parts thereof or used as material (generally speaking, as trimmings or ornaments) therefor.

That clauses 5, 6, and 7 relate to articles susceptible of a great variety of uses, some of which manifestly may be as parts of wearing apparel or trimmings or ornaments therefor.

That clause 8 is inserted for the purpose of establishing that any articles, whether wearing apparel or not, which are made wholly or in part of any of the woven fabrics or articles thereinbefore mentioned, shall not escape classification under the paragraph solely because they have been used as materials. This statement, however, must be understood in connection with the settled rule touching the interpretation of tariff statutes, that if a more specific provision for an article, otherwise dutiable under the paragraph by force of clause 8, is elsewhere found, it controls the classification thereof.

That the principal function of clause 9 manifestly is to fix the rate of duty at 60 per cent ad valorem on all merchandise dutiable under the paragraph. It is also designed to cut off any claim for a different rate which is founded solely upon the form, shape, construction, or component material of the yarns, threads, or filaments used in the manufacture thereof. This latter provision was undoubtedly inserted by Congress as an exercise of abundant caution, and we do not

think its purpose or effect was or is to enlarge the scope of the preceding clauses, to each of which it manifestly applies.   As affecting the provisions for tuckings, for instance, all it means is that tuckings of whatever yarns, threads, or filaments composed are still tuckings for the purposes of the paragraph.

Recapitulating, it therefore appears that clause 2 expressly relates to wearing apparel of lace; clause 3 to wearing apparel embroidered, tamboured, appliquéd, or scalloped, by whatever name known; clauses 1, 4, 5, 6, and 7 in part to things which may or may not be wearing apparel or parts thereof according to the use made of them; and that clause 8, which relates to "articles," may include wearing apparel made in whole or in part of any fabric or article named in the paragraph.

In other words, under every clause some wearing apparel may find its classification, while in no clause is the term "not specially provided for" made to refer to wearing apparel by that name. When other provisions hereinafter referred to are considered, it is probable, however, that it was not expected or intended that the major portion of imported wearing apparel would be dutiable under the paragraph, but rather it would seem primarily designed to cover other classes or kinds of merchandise; especially is this so when regard is had to the fact that the duty thereunder (60 per cent ad valorem) is one of the highest imposed by the act, and higher than is elsewhere imposed upon wearing apparel by that name.

As to its origin, an examination of the tariff act of 1913 in connection with that of 1909 at once demonstrates that, in paragraph 358, the Congress gathered and consolidated provisions for various things found in Schedules I, J, K, and L of the act of 1909, including the provision for artificial silk and products thereof found in Schedule L, and the provisions for some things, for instance "galloons," found in paragraph 179 of Schedule C, and then placed the consolidated paragraph in the "sundries" schedule (N) of the present act, following all the other schedules mentioned, which have the same relative position in both acts.

It will be noted that the things the provisions for which are so consolidated, whether articles or materials, are, generally speaking, such as may serve a useful as well as ornamental purpose or both, and which apparently may be made of the primary raw materials, cotton, flax, or other vegetable fiber, wool or silk when such raw materials have been manufactured into yarns, or threads, or filaments of imitation silk or india rubber, or certain tinsel wire, bullion or metal threads.

It will also be noted that in the various before mentioned schedules of the present tariff act there is, generally speaking, no *eo nomine* provision for the different things the provisions for which are in

paragraph 358. To illustrate, "galloons," named in paragraphs 179, 349, 350, 383, 402, and 405 of the act of 1909, are not named in the corresponding paragraphs 150, 278, 292, 316, and 319 of the act of 1913, but seem only to be named in paragraph 358.

A further examination of the two acts discloses that the provision for wearing apparel found in the cotton schedule of the act of 1909, paragraph 324, is identical for the purposes of this case with paragraph 256 relating thereto in the same schedule of the act of 1913; that paragraph 382 of the earlier act in the wool schedule, also relating to wearing apparel, is substantially identical with paragraph 291 in the same schedule in the later act; that the flax and silk schedules of the act of 1909 contained no general wearing apparel paragraphs like those found in the cotton and wool schedules thereof, while both those schedules in 1913 (paragraphs 278 and 317) make provision therefor.

It is clear, therefore, that in the act of 1913 Congress made the following provisions for wearing apparel: It is to be assessed under paragraph 256 if composed wholly or in chief value of cotton or other vegetable fiber or if composed of such material and india rubber, unless otherwise specially provided for. If it is composed wholly of flax, hemp, ramie, or any of those materials and india rubber, it is to be assessed under paragraph 278. If composed wholly or in chief value of wool, it is dutiable under paragraph 291, unless otherwise specially provided for. If composed of silk, or if in chief value of silk, or silk and india rubber, it falls within paragraph 317 unless otherwise specially provided for.

Congress evidently believed that a consolidation of the provisions now in paragraph 358 would be in the line of an intelligent revision of the law relating to the merchandise therein provided for, would be helpful for the purposes of customs administration, and would tend to secure a uniform rate of duty upon things of the same general class.

Keeping in mind what has already been said, we advance to the precise question as to under which of the paragraphs 256 or 358 these shirt bosoms, composed in chief value of tuckings of cotton, should be assessed.

We know nothing as to the method of producing these tuckings. other than as disclosed by the sample before us and as stated by the appraiser. It appears to have been woven in a loom and then subjected to some processing which permanently secured or fastened the plaits or tucks by an additional independent thread or threads. When or how the plaits or tucks were produced does not appear, other than by the term "loom woven," which the appraiser applied thereto. Tuckings, however, they are for the purposes of this case.

Condensing the same, to the end that its application to these shirt bosoms may be determined, paragraph 256 may be read as follows:

> Articles of wearing apparel of every description, composed of cotton or other vegetable fiber, or of which cotton or other vegetable fiber is the component material of chief value, made up or manufactured wholly or in part, not otherwise specially provided for.

Tuckings are named in clause 4 of paragraph 358, and likewise condensing it, that paragraph for the purposes of this case would read—

> Tuckings, and articles made in whole or in part thereof, of whatever yarns, threads, or filaments composed.

If the merchandise here were *tuckings* and nothing else it is clear that the latter paragraph, in which an *eo nomine* provision therefor is found, would be applicable, and it is strenuously urged that the expression, "articles made wholly or in part thereof," which relates to tuckings, must be given the same controlling effect.   This immediately causes inquiry as to whether the term, "wearing apparel of every description made up or manufactured wholly or in part," does not more closely describe the merchandise.   We think it does.   The word "articles" is broader in scope than the term "wearing apparel," because any piece of wearing apparel is an article, while, of course, not every article is wearing apparel.   The same conclusion results if the term "tuckings and articles made in whole or in part thereof" be contrasted with the expression, "wearing apparel of every description made up or manufactured wholly or in part," because the former includes a multitude of things other than such wearing apparel.   Then, too, the full effect of clause 8 will be more plainly disclosed if we insert after "tuckings" all the *eo nomine* or descriptive terms of the merchandise to which paragraph 358 applies, as it is to *articles* made in whole or in part from any thereof that clause 8 relates.   So understood it is at once manifest that the term "*articles* made in whole or in part thereof" covers a vast number of things only a small part whereof may be wearing apparel.   The effect of clause 8 is to regard, for its purposes, everything that has already been referred to in the paragraph as *material* for something else.

In Arnold *v.* United States (147 U. S., 494) the term "clothing, ready-made, and articles of wearing apparel, made up or manufactured wholly or in part of wool" was held more specific than that of "woolen cloths, * * * knit fabrics, and all fabrics made on knitting machines or frames, and all manufactures of every description made wholly or in part of wool," the merchandise under consideration being knit woolen shirts, drawers, etc.   The court said:

> Clothing and articles of wearing apparel are more specific than cloths and knit fabrics.   Out of cloth and knit fabrics clothing and wearing apparel are made.   The latter are included within the former, while the former are not included within the latter.

If our comparison be further extended to consider the term "of whatever yarns, threads, or filaments composed" in the one case and the term "composed of cotton or other vegetable fiber or of which cotton or other vegetable fiber is the component material of chief value" in the other, the first conclusion is still required, because in the former term the yarns, threads, or filaments may be composed of various materials or a combination thereof without regard to their relative values, while in the latter there must be present the limitation of chief value of cotton or other vegetable fiber, which is a narrower description than one in which that condition is not present.

In Hartranft v. Meyer (135 U. S., 237), it was in substance held that the term "all manufactures of wool of every description made wholly or in part of wool" was less specific than the term "manufactures of silk or of which silk is the component material of chief value," for the reason that the former term related to all manufactured articles of which any portion was wool, while the latter was more limited because of the fact it was confined to manufactures of silk as the component material of chief value. The merchandise involved was cloth composed partly of silk, partly of cotton, and partly of wool, silk being the component material of chief value. See also United States v. Vandegrift (3 Ct. Cust. Appls., 161; T. D. 32457).

Our first conclusion is also supported by the further fact, already pointed out, that the term "of whatever yarns, threads, or filaments composed" is not employed in paragraph 358 for the purpose of enlarging in any way its scope or to increase in any manner the specificity of any *eo nomine* or descriptive term thereinbefore employed, but is rather designed to prevent the escape of any of the merchandise already named in the paragraph from assessment thereunder, solely by reason of a claim founded upon any peculiar or distinctive feature of the yarns, threads, or filaments from which the same had been manufactured.

The whole issue so far discussed may be summed up in this: These shirt bosoms are precisely and more specifically described by the term "wearing apparel composed of cotton or of cotton in chief value, made up or manufactured in part" than by the term "articles made up in part of tuckings of whatever yarns, threads, or filaments composed," because each of the required attributes of the first term more closely describes and identifies them than do the attributes of the second term.

But the Government urges that the term "not otherwise specially provided for" in paragraph 256 nevertheless requires that these shirt bosoms be excluded therefrom, in which event it says they fall within paragraph 358.

The presence of this term in a given paragraph advises the customs authorities that merchandise otherwise within the paragraph *may* be

elsewhere classified, because elsewhere provided for.   If the provision found elsewhere is *eo nomine,* and the one in which the above term is found is general, the *eo nomine* provision will control, because the more specific, and an *eo nomine* designation is not *per se* shorn of its controlling force because it is coupled with the expression "not otherwise specially provided for."   Movius *v.* Arthur (95 U. S., 144); Arthur *v.* Lahey (96 U. S., 112); Chew Hing Lung *v.* Wise (176 U. S., 156); Krauss *v.* United States (2 Ct. Cust. Appls., 17; T. D. 31574).

Government counsel, however, misapprehends the law in its claim that because the term "not otherwise specially provided for" is found in paragraph 256 the merchandise here can not be classified thereunder if any other applicable provision therefor can be found. ·

In Hall *v.* United States (T. D. 25340) a decision of the Board of General Appraisers was affirmed.   In the decision of the board by De Vries, G. A., discussing the effect of the term "not specially provided for," it was said in substance that if two provisions were equally applicable to merchandise the presence in the one and tl e absence in the other of that term would determine its classification, but that it was only invoked to determine a doubt between equally applicable provisions of law.   We think this manifestly is the sound rule and applying it to this case are clear that the shirt bosoms here are dutiable under paragraph 256.

There is one further question which has given cause for much reflection, and that is the point made by the Government that the result of sustaining the board will be to render dutiable at a less rate articles, for instance, composed of tuckings, than the tuckings themselves.   Of course this is in some respects, at first blush at least, a somewhat inconsistent result and generally is not regarded with favor. Such was the view of the court in the case of Oppenheimer *v.* United States (71 Fed., 869), cited by the Government.   While sometimes persuasive, however, it is not necessarily controlling.   See United States *v.* Marsching (1 Ct. Cust. Appls., 216; T. D. 31257).

On the other hand, the importers with equal force point out that if the contention of the Government be sustained articles of wearing apparel otherwise clearly within paragraph 256 must be nevertheless assessed under paragraph 358 if there shall be found upon the same some simple bit of tucking or braid.   This also apparently inconsistent result has led the board in T. D. 34755 to classify a dress suit having braid sewed to the outside seam of the trouser leg as wearing apparel under paragraph 291 rather than under paragraph 358.

Whichever view is adopted the claim of inconsistent results may well be made, but in view of the fact that Congress has not only continued the provisions for wearing apparel found in the act of 1909 in two schedules, but has inserted new provisions therefor in the schedules relating to flax and to silk, we think it safer to adopt the views above suggested and leave it to the legislative body to remedy the resulting evils if any there be.

Then, too, it may be said that while Congress intended to impose a high duty upon tuckings, imported as such, it did not intend to impose a like duty upon everything, finished or unfinished, of which tuckings are a part, especially if and when such things were wearing apparel composed wholly or in chief value of the various primary materials within the contemplation of the different wearing apparel paragraphs.

In view of what has already been said, we find it unnecessary to more fully discuss the various claims which have been ably made by the Government and forcefully answered by the importers or to make more specific reference to the cases cited. Our views of the purpose and effect of paragraph 358 as a whole, when considered with reference to the other provisions of the tariff act of 1913, require the conclusion indicated. Moreover, it is not without the support of a well-reasoned decision of the board under a similar prior statute. See the Wanamaker case, G. A. 5357 (T. D. 24509).

The judgment of the Board of General Appraisers is *affirmed*.