## FIELD & CO. v. UNITED STATES (No. 1615).[1]

1. HANDKERCHIEFS, EMBROIDERED OR SCALLOPED, HOW DUTIABLE—RELATIVE
     SPECIFICITY.
     With reference to embroidered or scalloped, hemmed or unhemmed, linen or
     cotton handkerchiefs, paragraph 358, tariff act of 1913 ("handkerchiefs, * * *
     embroidered * * * or * * * scalloped, * * * of whatever yarns, threads,
     or filaments composed"), is more specific than paragraph 255 ("handkerchiefs * * *
     composed of cotton"), or paragraph 282 ("handkerchiefs composed of flax"), and
     classifies them for duty.

2. CONSTRUCTION—ONE PARAGRAPH CONSTRUED IN THE LIGHT OF OTHERS.
     A comparative reading of all the handkerchief paragraphs shows that paragraph
     358 takes from all the others all embroidered or scalloped handkerchiefs.

3. CONSTRUCTION—PARAGRAPH 358, TARIFF ACT OF 1913.
     In paragraph 358 both "handkerchiefs" and "all articles or fabrics" are modified
     by "embroidered" and "scalloped," and an unfinished embroidered or scalloped
     handkerchief, even if not far enough advanced to be a handkerchief, would be
     dutiable thereunder.

### United States Court of Customs Appeals, March 9, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7768 (T. D. 35654).

[Affirmed.]

*Crim & Wemple* (*William L. Wemple* of counsel) for appellants.

· *Bert Hanson,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, of
counsel), for the United States.

[Oral argument Feb. 11, 1916, by Mr. Wemple and Mr. Hanson.]

Before, MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in the present case consists of certain linen and
cotton handkerchiefs which were imported under the tariff act of
1913.

The collector assessed duty upon the articles at the rate of 60
per cent ad valorem as "handkerchiefs, embroidered," within the
provisions of paragraph 358 of the act.

The importers protested, claiming an assessment of the cotton
handkerchiefs at the rate of 25 per cent or 30 per cent ad valorem
under paragraph 255, and of the linen ones at the rate of 35 per
cent or 40 per cent ad valorem under paragraph 282 of the act.

The protest was submitted upon evidence to the Board of General
Appraisers. The board found that the handkerchiefs represented
by Nos. 1, 2, 3, 6, 7, 8, and 9 of collective Exhibit A, as well as those
of collective Exhibit B, were in fact embroidered, while those rep-
resented by No. 4 of collective Exhibit A were scalloped. As to
the foregoing articles the board overruled the protest, from which
decision the importers appealed. On the other hand, the board

---

[1] Reported in T. D. 36260 (30 Treas. Dec., 483).

found that the handkerchiefs represented by No. 5 of collective Exhibit A were neither embroidered nor scalloped. As to these the protest was sustained, from which ruling no appeal was taken by the Government.

The following is a copy of the relevant provisions of the tariff act of 1913, to which is added a copy of the paragraph relating to silk handkerchiefs, for illustration:

255. Handkerchiefs or mufflers composed of cotton, not specially provided for in this section, whether finished or unfinished, not hemmed, twenty-five per centum ad valorem; hemmed, or hemstitched, thirty per centum ad valorem.

282. Handkerchiefs composed of flax, hemp, or ramie, or of which these substances, or any of them, is the component material of chief value, whether in the piece or otherwise, and whether finished or unfinished, not hemmed or hemmed only, thirty-five per centum ad valorem; if hemstitched, or imitation hemstitched, or revered, or with drawn threads, but not embroidered, initialed, or in part of lace, forty per centum ad valorem.

315. Handkerchiefs or mufflers composed wholly or in chief value of silk, finished or unfinished; if cut, not hemmed or hemmed only, 40 per centum ad valorem; if hemstitched or imitation hemstitched, or revered, or having drawn threads, but not embroidered in any manner with an initial letter, monogram, or otherwise, 50 per centum ad valorem.

358. * * * Handkerchiefs, napkins, wearing apparel, and all other articles or fabrics made wholly or in part of lace or of imitation lace of any kind; embroideries, wearing apparel, handkerchiefs, and all articles or fabrics embroidered in any manner by hand or machinery, whether with a plain or fancy initial, monogram, or otherwise, or tamboured, appliquéd, or scalloped by hand or machinery, any of the foregoing, by whatever name known; * * * all of the foregoing, of whatever yarns, threads, or filaments composed, sixty per centum ad valorem.. . .

The question presented by the present record, as already stated, is twofold: First, whether the handkerchiefs now upon appeal come within the *eo nomine* provision for handkerchiefs contained in paragraph 358, *supra;* and, second, if so, whether that provision governs the assessment of the present articles to the exclusion of the competing *eo nomine* provisions for handkerchiefs contained in paragraphs 255 and 282, *supra.* Upon these issues the board found, as a matter of fact, that the handkerchiefs in question were either embroidered or scalloped, and thus were within the terms of paragraph 358; and, as a matter of law, further found that the latter paragraph governed the assessment of the articles to the exclusion of paragraphs 255 and 282.

There was but a single witness who testified in the case; this was Mr. Nutting, who was called by the importers, and who apparently is identified with them in business. The witness testified that he was a buyer of handkerchiefs, and had for 14 years made frequent trips to Europe for the purpose of buying such articles; that he had prepared a list of the items covering the merchandise in question. This memorandum was produced and filed as part of his testimony. The witness also produced samples of the merchandise, and these were

received as exhibits. They were marked "Collective Exhibit A" (containing nine numbers), "Collective Exhibit B," and "Collective Exhibit C." The witness stated that the handkerchiefs in question were all embroidered, except No. 5 of collective Exhibit A. In the memorandum submitted by the witness all of the handkerchiefs are said to be embroidered except No. 5, just referred to, and No. 4, which, however, is described in the memorandum as scalloped.

The last question and answer appearing in the witness's testimony are as follows:

Q. You don't dispute that they are all embroidered?—A. No, sir.

An inspection of the exhibits leads to an acceptance of the witness's statement that the handkerchiefs are all embroidered or scalloped, except No. 5, which is not now in issue. In the case of Nos. 1, 2, 3, 7, 8, and 9 of collective Exhibit A, and all of collective Exhibit B, ornamental figures, in part colored, are superimposed by needlework upon the fabric of the handkerchiefs. In the case of No. 6 of the first exhibit a permanent and ornamental initial is similarly added to the fabric. No. 5 has scalloped edges within the rule laid down in Gardner & Co. v. United States (2 Ct. Cust. Appls., 477; T. D. 32228). Upon this record therefore it is unnecessary for us to review the definitions and decisions relating to embroideries, since it must be accepted by the court as an undisputed and indeed conceded fact that the handkerchiefs in question in this case are either embroidered or scalloped. As we construe paragraph 358 this finding brings the articles within the provisions of that paragraph, for "handkerchiefs, and all articles or fabrics embroidered in any manner by hand or machinery, whether with a plain or fancy initial, monogram, or otherwise, or tamboured, appliquéd, or scalloped by hand or machinery, any of the foregoing by whatever name known." In our view the term "handkerchiefs" as well as the succeeding term "all articles or fabrics" is modified by all of the descriptive terms following it in the quotation just above copied. The phrase "by whatever name known" was manifestly added out of great caution, and may apply less aptly to handkerchiefs than to the other subjects which it concurrently modifies, but nevertheless the terms quoted are all parts of a single construction. The eo nomine enumeration of handkerchiefs was evidently placed in the paragraph to make more manifest the legislative intention that such articles when embroidered or scalloped should bear the same rate of duty as that imposed in the paragraph upon other embroideries.

It appears from the testimony and the exhibits that the handkerchiefs which are represented by collective Exhibit B are not yet finished, their edges being yet unbound and unhemmed in any manner. It nevertheless appears that they already have, in fact, acquired the name and character of handkerchiefs, and they would

therefore fall within that enumeration of paragraph 358; but even if they were not far enough advanced in the process of manufacture to respond to the *eo nomine* enumeration of handkerchiefs, they would nevertheless come within the provision for "all articles or fabrics," etc., contained therein.

We therefore agree with the finding of the board that the articles in question fall within the enumerations of paragraph 358.

We come next to compare the relative degrees of applicability of paragraphs 255, 282, and 358 to the merchandise in question. The latter paragraph, according to our interpretation, provides by name for "handkerchiefs  *  *.  *  embroidered in any manner by hand or machinery, whether with a plain or fancy initial, monogram, or otherwise, or  *  *  *  scalloped by hand or machinery,  *  *  * of whatever yarns, threads, or filaments composed." The comprehensive terms of this enumeration, read in the light of the context, convince us that it was the legislative purpose thereby to reach all embroidered and scalloped handkerchiefs and to subject them because of those conditions to the high rate of duty prescribed by the paragraph, to the exclusion of all paragraphs of the act which omitted specific reference to those forms of ornamentation.

Paragraph 255 provides *eo nomine* for handkerchiefs composed of cotton, not specially provided for in the act, whether finished or unfinished. Paragraph 282 provides for handkerchiefs composed of flax, hemp, or ramie, whether finished or unfinished, imposing a duty of 35 per cent ad valorem thereon if not hemmed or hemmed only, and a rate of 40 per cent ad valorem if hemstitched, or imitation hemstitched, or revered, or with drawn threads, "but not embroidered, initialed, or in part of lace." Paragraph 315 provides in similar terms for handkerchiefs composed of silk and contains a similar reservation.

It is contended by the appellants that the cotton and linen paragraphs apply more specifically than the embroidery paragraph to the present articles, even assuming that the articles fall within the enumerations of all of the paragraphs. We can not, however, agree to this proposition. All of the enumerations in question are of handkerchiefs *eo nomine.* The comparison in specificity must therefore depend upon the additional conditions or qualities which are prescribed by the respective provisions. In comparing these we find that the enumeration of "handkerchiefs composed of cotton," or "handkerchiefs composed of flax," is not as exact or specific as "handkerchiefs,  *  *  *  embroidered in any manner by hand or machinery, whether with a plain or fancy initial, monogram, or otherwise, or *  *  *  scalloped by hand or machinery,  *  *  *  of whatever yarns, threads, or filaments composed." The latter enumeration

contains by force of its last phrase all of the terms included within the former ones, and in addition thereto contains a specific term in reference to the ornamentation of the articles by means of embroidery or other prescribed methods, thus narrowing the described class of articles as compared with the former enumerations. This comparison of the paragraphs is furthermore confirmed by the terms "but not embroidered, initialed, or in part of lace," which appear in paragraphs 282 and 315. This reservation does not of itself undertake to prescribe a rate of duty for embroidered handkerchiefs, but simply indicates that such handkerchiefs are provided for elsewhere in the act. This reference must, of course, relate to paragraph 358. It is true that no such reservation appears in paragraph 255, although a general n. s. p. f. clause appears therein. In paragraphs 282 and 315 the foregoing reservation appears in the concluding clause of the paragraphs, and upon first reading it may seem to relate only to such linen or silk handkerchiefs as are hemstitched or imitation hemstitched, or revered, or with drawn threads. A comparison of the respective paragraphs, however, convinces us that Congress intended the reservations in question to apply to the entire paragraphs in which they appear, and that the same were inserted from abundance of caution only, and not because the reservations were strictly necessary to exclude embroidered handkerchiefs from the operation of the cotton, linen, or silk paragraphs in question, for that result is fully accomplished by force of the more specific enumeration of paragraph 358. This conclusion is not at all in conflict with our decision in the case of United States v. Snow's United States Sample Express Co. (6 Ct. Cust. Appls., 120; T. D. 35388), wherein we held that a provision for "wearing apparel composed of cotton or of cotton in chief value, made up or manufactured in part," was more specific in relation to the goods then in question than a provision for "articles made up in part of tuckings of whatever yarns, threads, or filaments composed." The primary comparison in that case was between the enumeration of "wearing apparel" as contrasted with the enumeration of "articles made up in part of tuckings," the first of which contained a limitation as to use which was absent from the second. In the present case the primary enumeration in each provision is "handkerchiefs," and the relative degrees of specificity of the several enumerations depend upon the modifying phrase "composed of cotton" or "composed of flax," as compared with the modifying phrase "embroidered in any manner  *  *  *  of whatever yarns, threads, or filaments composed." As already stated, the latter description as compared with the former is narrowed by the provision for embroidery, and is therefore the more specific of the enumerations in question.

In accordance with the views above expressed, the decision of the board is *affirmed*.