(C. D. 744)

STANLEY DOGGETT, INC. v. UNITED STATES

United States Customs Court, First Division

(Decided March 6, 1943)

*Eugene R. Pickrell* for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks*, special attorney), for the defendant.

Before OLIVER, WALKER, and COLE, Judges

WALKER, Judge: The importation at bar is described on the consular invoice accompanying the entry papers as "Vegetable Logwood Extract" and has been termed by one of the plaintiff's witnesses a "modified logwood extract." The exact method of preparation of the product involved has not been shown, but it appears to be undisputed that similar products are prepared by precipitating logwood extract with a combination of sodium bichromate and ferrous sulphate, the precipitate being oxidized in some manner, either by subjecting it to a current of air, or chemically, after which the material is filtered and dried.

Logwood is a wood that grows in South and Central America and in the West Indies, and is sometimes called "Campeachy wood," no doubt due to the fact that its discovery was in the vicinity of the Gulf of Campeachy in Central America. The wood, which is very heavy and sinks in water, was first found by the Spaniards who followed Columbus in 1500, they having discovered that it colored water black.

There is a coloring principle in the wood known as haematoxylin. The evidence discloses that in preparing logwood extract the wood is chipped, the chips are placed in an extractor and subjected to steam

and water, in which the coloring principle is extracted in a thin liquor, which is evaporated to any desired consistency.

It appears that in the manufacture of logwood extract a certain portion of it oxidizes on contact with the air, but that in order to use the coloring principle therein, haematoxylin, as a color it is necessary to oxidize it completely, which is done by the use of nitrate of soda and acetic acid, by the use of potassium bichromate, or by blowing air through it. Haematein is the oxidation product of haematoxylin.

A qualitative and quantitative analysis of the imported product, as shown by exhibit 1, reveals that it contains 21.54 per centum of chromium oxide, 0.45 per centum of iron oxide, and the balance, of about 78 per centum, logwood extract.

It was classified and assessed with duty by the collector of customs under the provisions of paragraph 70 of the Tariff Act of 1930, which read as follows:

PAR. 70. Chrome yellow, chrome green, and other colors containing chromium, in pulp, dry, or ground in or mixed with oil or water, 25 per centum ad valorem.

The protest claims that it should be rightly classified under the provisions of paragraph 38 of the same act, which read as follows:

PAR. 38. Extracts, dyeing and tanning: Chestnut, cutch, chlorophyll, divi-divi, fustic, hemlock, logwood, mangrove, myrobalan, oak, Persian berry, quebracho, sumac, saffron, safflower, saffron cake, valonia, wattle, and other extracts, decoctions, and preparations of vegetable origin used for dyeing, coloring, staining, or tanning, not specially provided for, and combinations and mixtures of the foregoing articles in this paragraph, 15 per centum ad valorem: *Provided*, That no article containing alcohol shall be classified for duty under this paragraph.

or, in the event it be deemed the proof is not sufficient therefor, under paragraph 71, which reads as follows:

PAR. 71. Gas black, lampblack, and all other black pigments, by whatever name known, dry or ground in or mixed with oil or water, and not specially provided for, 20 per centum ad valorem.

The rule of statutory construction known as the rule of *ejusdem generis* and certain legislative history are invoked by plaintiff in support of the claim that the merchandise is not properly classifiable under paragraph 70, *supra*. While there does not seem to be any question but that the merchandise represented by exhibit 1 is a color containing chromium, dry, it is pointed out that exhibit 1 is not of the class or character of colors particularly enumerated, viz, chrome yellow and chrome green, in that the coloring principle in the merchandise at bar is vegetable in character, while the coloring principle in chrome yellow and chrome green is mineral.

In our view plaintiff has not established such a difference in character between the article at bar and the particular articles enumerated in paragraph 70, *supra*, as would exclude the former from classification under the general words "other colors containing chromium"

by the application of the rule. Aside from the single difference of the kind of coloring principle already referred to, which would not appear to be so vital an element of character as would substantially differentiate the article at bar from the class of the particular colors named in paragraph 70, the article at bar has other elements of similarity to such colors. It would appear from the record that it has similar uses, or, at least, no difference of use was established, and it was apparently produced by a method similar to that by which chrome yellow is produced, i. e., by precipitation resulting from the addition of a solution of a base to an acid solution.

In his opening statement counsel for the plaintiff said:

* * *. The chromium oxide and the iron oxide [found in the article at bar] are mordants in fixing the coloring matter in logwood extract to the various materials that are colored, dyed, or stained with this color. That is the purpose of the chromium and the iron oxide in the merchandise at bar. * * *.

This statement does not seem to be borne out by the record. It appears from the testimony adduced that when the merchandise at bar is used in dyeing a separate mordant is necessary.

Nor does examination of the legislative history of the paragraph tend to support the contention of the plaintiff. The immediate predecessor of the existing paragraph 70 was paragraph 72 of the Tariff Act of 1922, which was, word for word, identical in language. The predecessor of paragraph 72 of the Tariff Act of 1922 was paragraph 54 of the Tariff Act of 1913, which reads as follows:

Chrome yellow, chrome green, and all other chromium colors in the manufacture of which lead and bichromate of potash or soda are used, in pulp, dry, or ground in or mixed with oil or water, 20 per centum ad valorem.

It will be at once seen that the present provision, as well as paragraph 72 of the Tariff Act of 1922, contains a somewhat broader "basket" provision than the foregoing.

In the Summary of Tariff Information, 1920, prepared for the use of the Committee on Ways and Means of the House of Representatives at the time the revision of the Tariff Act of 1913 was under consideration, at page 102, under the heading "General Information" relating to paragraph 54, supra, and the subheading "Description and uses," we note that chrome yellow, chrome green, and chrome red are discussed, as well as zinc yellow, which, under Abstract 37062, T. D. 35000, was held by this court to be dutiable under paragraph 61 of the act of 1913, providing for pigments containing zinc, rather than under paragraph 54, supra.

It appears very likely that the abstract decision referred to, as well as Abstract 37081 (T. D. 35020), relating to oxide of chromium, containing no lead or potassium or sodium bichromate, which was held to be dutiable under paragraph 63 of the same act, providing for

paints, colors, pigments, etc., rather than under paragraph 54, *supra*, had much to do with the subsequent revision of the chromium color provision.

In the Summary of Tariff Information, 1921, prepared by the Tariff Commission for the use of the Committee on Finance of the United States Senate after the passage of the bill (H. R. 7456) which later became the Tariff Act of 1922, we note the following reference to the provision of paragraph 72 thereof as passed by the House:

> *Important changes in classification.*—The chrome colors dutiable under paragraph 54, act of 1913, are limited to those in the manufacture of which lead and bichromate of potash or soda are used. Although these are the principal chromium colors, there are other chromium pigments which do not require lead and bichromate of potash or soda in their manufacture. For example, oxide of chromium containing no lead or potassium bichromate has been declared dutiable as a color under paragraph 63 (act of 1913) rather than as chrome green under paragraph 54 (same act). (Abstract 37081, of 1914) Zinc chromate or "zinc yellow" is another important chromium color. *There being no apparent reason why all chromium colors should not receive the same tariff treatment, as the chromium content is the item of chief value, the phrase "in the manufacture of which lead and bichromate of potash or soda are used," was omitted.* (Reclassification Report, p. 78.) [Italics added.]

It is manifest from the italicized language that it was intended by the enlargement of the "basket" provision to include all the so-called "chromium colors," the basis therefor being that the "chromium content is the item of chief value."

While it is true that the only colors listed and described in the said summary, and also in the Summary of Tariff Information, 1929, viz, chrome green, chrome yellow, chrome red, and zinc yellow, are mineral in character, nevertheless such list does not purport to name all of the colors intended to be made dutiable thereunder, but only the more important ones. In this connection we note that Funk & Wagnalls New Standard Dictionary, under the definition of "chrome," refers to "c. [chrome] black, blue, green, red, yellow, etc.," and in the list of varieties of black under the definition of "black" we note that chrome black is named, having as its source logwood.

Under the circumstances, we cannot hold that either by virtue of the rule of *ejusdem generis* or the legislative history of the paragraph the merchandise at bar is excluded from the purview of paragraph 70, *supra.*

Considering next the relative specificity of paragraphs 70, 38, and 71, the latter two being the ones under which claim is made, we note that paragraph 38 may be divided into three parts, the first part covering certain named extracts, among which is logwood. We think it is apparent from the record that the article in the case at bar is something more than logwood extract; it is an article made with the use of logwood extract.

The second part of paragraph 38 covers "other extracts, decoctions, and preparations of vegetable origin used for dyeing, coloring, staining, or tanning, not specially provided for." While the article at bar is shown to be a preparation used for dyeing, coloring, or staining, nevertheless it is not a preparation "of vegetable origin" but rather of vegetable *and* mineral origin. The chromium and iron used in the preparation of the article at bar were as important as the logwood extract. Note, too, that they were not used in the preparation of the logwood extract, but in the preparation of the article at bar, which is something different from logwood extract.

The third part of paragraph 38 covers "combinations and mixtures of the foregoing articles in this paragraph." The article at bar is not a combination or mixture "of the foregoing articles in this paragraph" but a combination of one of the articles named and certain articles not named or covered by the paragraph.

From the foregoing we conclude that the article at bar is not classifiable under paragraph 38. Our next inquiry is whether it is classifiable under paragraph 71 as a "black pigment, by whatever name known, dry * * * ; not specially provided for."

Examination of the record reveals that every witness interrogated on the point identified the merchandise before us as a black pigment. The competition is therefore between the provision in paragraph 70 for "other colors containing chromium" and the provision in paragraph 71 quoted above. It will be noted that while the latter is modified by a "not specially provided for" clause, it is nevertheless an *eo nomine* designation, while the provision in paragraph 70 is a general provision, broader in scope. The rule in such cases is well settled, and is expressed in *Bischoff & Co.* v. *United States*, 7 Ct. Cust. Appls. 138, T. D. 36458, as follows:

* * *. The purpose and effect, generally speaking, of such ["not specially provided for"] provisions was considered in the case of United States *v.* Snow (6 Ct. Cust. Appls., 120; T. D. 35388). In substance it was said that its presence in a given paragraph advised the customs authorities that merchandise otherwise within it might be classified under some other paragraph; that if the other paragraph contained an *eo nomine* provision and the paragraph in which the n. s. p. f. provision was found was general and not *eo nomine*, the former would control; that an *eo nomine* provision *was not necessarily shorn of its controlling force because coupled with the provision n. s. p. f.;* that where one of two competing paragraphs contained the n. s. p. f. provision and the other did not, the description of each being in other respects equally specific, the presence in the one and the absence from the other of such provision would determine the classification of merchandise equally within either paragraph. See in this connection Hall *v.* United States (131 Fed., 684; T. D. 25340); same case (136 Fed., 774); and Thomas *v.* Wanamaker (129 Fed., 92). [Italics added.]

Also in this connection see *United States* v. *Herman H. Sticht & Co.*, 22 C. C. P. A. 40, T. D. 47048, wherein it was said:

* * * it is well settled by this court that if an article is more specifically described in a paragraph containing the "not specially provided for" clause than in a paragraph not containing such clause, the presence of the clause in the one paragraph will not have the effect of excluding the article from the paragraph where it is more specifically provided for. *Knauth, Nachod & Kuhne* v. *United States,* 4 Ct. Cust. Appls. 58, T. D. 33307; *Loewenthal & Co.* v. *United States,* 6 Ct. Cust. Appls. 209, T. D. 35464; *Comstock & Theakston* v. *United States,* 12 Ct. Cust. Appls. 502, T. D. 40698.

We therefore sustain the claim for duty at the rate of 20 per centum ad valorem under the provisions of paragraph 71, *supra,* and judgment will issue accordingly.