UNITED STATES *v.* G. L. RAMSEY a/c JUVENILE MFG. Co. (No. 4813)[1]

United States Court of Customs and Patent Appeals, February 8, 1955

*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon* and *Richard H. Welsh*, special attorneys, of counsel), for the United States.

*Philip Stein* (*Marjorie M. Shostak* and *Lang, Byrd, Cross & Ladon* of counsel) for appellee.

[Oral argument December 7, 1954, by Mr. Welsh and Mr. Stein]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, entered pursuant to its decision, C. D. 1571, 31 Cust. Ct. 201.

The merchandise in issue, consisting of baby dress fronts, was classified by the Collector of Customs at the port of Laredo as "Parts of embroidered cotton wearing apparel" and assessed with duty at 90 per centum ad valorem under paragraph 1529 (a) of the Tariff Act of 1930, which, so far as pertinent, reads as follows:

fabrics and articles embroidered * * * and fabrics and articles wholly or in part thereof, finished or unfinished * * * by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of filaments, yarns, threads * * * 90 per centum ad valorem.

[1] C. A. D. 580.

The importer in its protest claimed that the merchandise was dutiable at 75 per centum ad valorem under said paragraph 1529 (a), as modified by the Trade Agreement with France, T. D. 48316, 69 Treas. Dec. 853, which reads as follows:

Articles of wearing apparel, finished or unfinished, wholly or in chief value of cotton or silk, however provided for in paragraph 1529 (a), in whole or in part of machine-made lace, or embroidered * * * or from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving to finish or ornament the open-work, not including one row of straight hemstitching adjoining the hem, 75% ad val.

The collector's classification hereinbefore described was the basis of a motion for a rehearing, Abstract 57881, and stands here with no supporting presumption of correctness,[1] a situation which is thus acknowledged and sought to be corrected in the Government's brief:

It appears herein from the report of the Collector that the involved merchandise was classified as "parts of embroidered cotton wearing apparel under paragraph 1529 (a), Tariff Act of 1930" and assessed with duty at 90 per centum ad valorem. An examination of paragraph 1529 (a), Tariff Act of 1930, discloses that there is no such provision. Said examination further discloses that the proper classification is under the provision of paragraph 1529 (a), Tariff Act of 1930, for "* * * articles embroidered * * * finished or unfinished * * *" at 90 per centum ad valorem.

There appears to be no dispute between counsel for the respective parties regarding the subject matter in controversy. The record consists of five samples of the merchandise, identified as Collective Illustrative Exhibit 1, together with the testimony of one witness for appellee, Mr. Harold M. Scherr, general manager of the Juvenile Mfg. Co., manufacturer of infants' and children's clothing since 1945. He had personal knowledge of the manufactured merchandise and was familiar from the outset with the technical processes employed in its manufacture, which are thus summarized in the Government's brief: (1) "As hereinbefore shown, the record established that a sketch of complete baby dresses was first made, after which material was purchased in the United States. The material was spread to heights of about 500 ply. Paper patterns were then applied to the material and a marker traced the outline of the paper pattern on the material. The material was then cut. In this manner, about 500 complete garments, consisting of the *fronts, backs, sleeves, neckbands, collars and cuffs* were cut. (2) Thereafter, the ornamental design was stamped on the *dress front* for guidance in the *embroidery* to be applied in Mexico and the *dress fronts* were sent to Mexico for the embroidery work. The *dress fronts, backs, sleeves, neckbands, collars and cuffs* were all earmarked for size and color so that upon the return of the *dress fronts* from Mexico, the

---

[1] *United States* v. *White Sulphur Springs Co.*, 21 C. C. P. A. (Customs) 203, T. D. 46728. *S. S. Kresge Co.* v. *United States*, 25 Cust. Ct. 89, 91–92, C. D. 1269. See also *Smith & Nichols (Inc.)* v. *United States*, 18 C. C. P. A. (Customs) 16, T. D. 43974. *S. S. Kresge Co.* v. *United States*, 25 C. C. P. A. (Customs) 1, T. D. 48975.

proper *dress fronts*, backs, sleeves, neckbands, collars, and cuffs could be matched. (3) Upon the return of the *embroidered dress fronts* from Mexico, the *fronts, backs, sleeves, neckbands, collars and cuffs* were matched and united, the neckband finished off, required buttonholes. were cut and buttons attached. The record also established as has been hereinbefore shown, that the *fronts, backs, sleeves, neckbands, collars and cuffs* constitute the *complete* garment." (Italics quoted.)

It was conceded at the trial that the merchandise in issue is embroidered and in chief value of cotton. It was further established there that the returned dress fronts are dedicated to a predetermined purpose and are suitable or usable for no purpose other than that for which they were originally designed and cut; namely, wearing apparel; that they are never sold as separate items; that the completed garments or the baby dresses, which include the embroidered fronts as a part thereof, are delivered to the purchaser; and that the said front in each of the garments so delivered represents 80% of the investment in the creation of each of the dresses.

The sole issue before the court is whether the baby dress fronts are to be classified as articles of wearing apparel, unfinished, embroidered, dutiable at 75 per centum ad valorem, as claimed by the importer, under paragraph 1529 (a) as modified; or whether they are to be classified under the same paragraph, unmodified by the said agreement, as articles, embroidered, other than wearing apparel, unfinished, dutiable at 90 per centum ad valorem, as urged by the Government.

The Customs Court sustained the protest of the importer and held that the embroidered dress fronts consist of articles of unfinished wearing apparel; to wit, unfinished baby dresses, dutiable at 75 per centum ad valorem.

The court in reaching its conclusion proceeded on the basis that the involved legislation explicitly provides not only for wholly completed fabrics and articles of wearing apparel but also for articles which, although embroidered, are otherwise unfinished and exclusively dedicated to use as part of a specific garment. In a painstaking and well-considered decision a list of authorities defining the principle of law applicable to the issues presented was accurately analyzed by the court, including, for example, *United States* v. *Snow's U. S. Sample Express Co.*, 6 Ct. Cust. Appls. 120, T. D. 35388, 28 Treas. Dec. 750; *United States* v. *Cartier (Inc.)*, 15 Ct. Cust. Appls. 334, T. D. 42493; *In re Mills et al.*, 56 Fed. 820.

With respect to the case last cited, the court made this pertinent comment:

In construing the phrase "made up wholly or in part" in Mill's case in the United States Circuit Court for the Southern District of New York (56 Fed. 820), Judge Lacombe used this language:

I think the true criterion when it is applied to wearing apparel is this: That it must at least be made up sufficiently far to enable us to identify the particular article of wearing apparel that is going to be made out of it.

The *Snow* case, *supra*, involved the relative construction of paragraphs 256 and 358 of the Tariff Act of 1913, with respect to imported shirt bosoms ornamented with tucks. Judge Barber in delivering the opinion of the court succinctly set forth the issue there presented and its disposition, as thus noted in the following pertinent excerpts:

Condensing the same, to the end that its application to these shirt bosoms may be determined, paragraph 256 may be read as follows:

Articles of wearing apparel of every description, composed of cotton or other vegetable fiber, or of which cotton or other vegetable fiber is the component material of chief value, made up or manufactured wholly or in part, not otherwise specially provided for.

Tuckings are named in clause 4 of paragraph 358, and likewise condensing it, that paragraph for the purposes of this case would read—

Tuckings, and articles made in whole or in part thereof, of whatever yarns, threads, or filaments composed.

If the merchandise here were *tuckings* and nothing else it is clear that the latter paragraph, in which an *eo nomine* provision therefor is found, would be applicable, and it is strenuously urged that the expression, "articles made wholly or in part thereof," which relates to tuckings, must be given the same controlling effect. This immediately causes inquiry as to whether the term, "wearing apparel of every description made up or manufactured wholly or in part," does not more closely describe the merchandise. We think it does. The word "articles" is broader in scope than the term "wearing apparel," because any piece of wearing apparel is an article, while, of course, not every article is wearing apparel. (Italics quoted.)

\*       \*       \*       \*       \*       \*       \*

The whole issue so far discussed may be summed up in this: These shirt bosoms are precisely and more specifically described by the term "wearing apparel composed of cotton or of cotton in chief value, made up or manufactured in part" than by the term "articles made up in part of tuckings of whatever yarns, threads, or filaments composed," because each of the required attributes of the first term more closely describes and identifies them than do the attributes of the second term.

\*       \*       \*       \*       \*       \*       \*

*Then, too, it may be said that while Congress intended to impose a high duty upon tuckings, imported as such, it did not intend to impose a like duty upon everything, finished or unfinished, of which tuckings are a part, especially if and when such things were wearing apparel composed wholly or in chief value of the various primary materials within the contemplation of the different wearing apparel paragraphs.* (Italics supplied.)

The court in thus holding that the ornamented shirt bosoms hereinbefore described were articles of wearing apparel, unfinished, drew no distinction between such articles which are "manufactured wholly or in part" and articles "finished or unfinished," of which tuckings are a part.

The Government in contending that the involved dress fronts were not unfinished wearing apparel urges that the authorities relied upon

in the instant case by the court below are clearly distinguishable and not in point, with the exception of *United States* v. *Cartier, supra,* with respect to which appellee states in its brief:

In that case, cited in support of its protest by the plaintiff below, and cited and relied upon by the trial court in its decision appealed from herein, the merchandise consisted of platinum wristlets or bracelet mountings, composed of crystal and rectangular links, fitted with a metal device to fasten the article around the wrist. It had been classified by the collector as "jewelry, unfinished," whereas the importer contended that the merchandise was dutiable as material for the manufacture of jewelry, or as articles or wares in chief value of platinum, not specially provided for.

This court in the cited case rejected the importer's claim, however, and in so doing held that—

the provision for "jewelry * * * unfinished" was designed by Congress * * * to provide that *an article so far processed that it was definitely committed to the manufacture of a particular kind of jewelry, but not completed,* should be subjected to the rate for unfinished jewelry. (Italics supplied.)

We consider, as did the court below, that the *Cartier* case is controlling in principle of the issue here involved. Moreover the Government's position in the recent case of *Coro, Inc.* v. *United States,* 41 C. C. P. A. (Customs) 215, C. A. D. 554, was unanimously approved here with respect to unfinished jewelry, as thus noted in the decision of this court:

In order to claim the lower rate of duty under the unfinished jewelry provision of paragraph 1527 (a), the importer would have to establish (1) that the importation had advanced beyond the stage of being a material suitable for use in the manufacture of any of the articles in paragraph 1527, (2) that it had been so far advanced by manufacture as to unmistakably indicate the particular article of jewelry which it would become when completed and (3) that it is commercially unfit in its advanced condition as imported for the making of anything else. * * *

Counsel for the Government contended in the instant case that considerable work must be done and materials added to complete the infants' dresses before they become wearing apparel. There is no merit in that argument. Whether or not the imported articles are completed is of no consequence in determining their proper classification.

We have thoroughly examined the authorities and arguments presented by appellant and find they have no controlling effect upon the issue of this case.

In view of that conclusion, the judgment of the United States Customs Court is *affirmed.*