(C. D. 2038)

QUON QUON COMPANY *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 17, 1958)

*Stein & Shostak* (*Marjorie M. Shostak* of counsel) for the plaintiff.
*George Cochran Doub,* Assistant Attorney General (*Joseph E. Weil* and *Richard E. FitzGibbon,* trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The merchandise the subject of this protest is described on the invoice as "Rattancore kleenex box cover" and

was assessed with duty at the rate of 50 per centum ad valorem under the provision in paragraph 411 of the Tariff Act of 1930 which reads, so far as pertinent, as follows:

PAR. 411. * * * baskets * * * any of the foregoing wholly or in chief value of * * * wood * * * not specially provided for * * *.

The protest claim is for duty at the rate of 16⅔ per centum ad valorem under the provision in paragraph 412 of the same act, as modified in the Presidential proclamations reported in T. D.'s. 52373 and 52476, for—

Manufactures of wood * * *, not specially provided for:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Other [than certain named manufactures not here involved] * * *.

At the trial, it was stipulated that the articles at bar are composed wholly or in chief value of rattancore or reed, and there seems to be no dispute, in view of the collector's classification and the claim made by the plaintiff, that rattancore and reed are wood. The issue, therefore, turns on whether the involved articles are baskets or not.

A sample, representative of the merchandise imported, was received in evidence without objection as plaintiff's illustrative exhibit 1. From an examination of the exhibit and the other evidence offered at the trial, there does not seem to be any question but that the article at bar was designed and functions as a holder for a standard size box of a popular brand of paper tissues. The cardboard box containing the tissues (a sample of which was received in evidence without objection as plaintiff's illustrative exhibit 2) fits snugly inside the imported article, which has a slot at the top to permit removing the tissues.

Plaintiff's illustrative exhibit 1 is designed to be used in a horizontal position, as on a bureau or dresser top, with the slot on the top side, or may be hung, by means of two loops provided, on hooks on a wall or other vertical surface.

The testimonial record is largely devoted to an exposition of the history of the design and development of the article at bar, and its sale and use as a cover or holder for a box of paper tissues. Two witnesses of experience in the trade in the United States which deals in baskets gave their opinion that the articles are not baskets.

Counsel for both parties cite and rely upon the decision of our appellate court in the case of *United States* v. *Byrnes & Co.*, 11 Ct. Cust. Appls. 68, T. D. 38728, judicially defining the term "baskets," as used in a predecessor provision of paragraph 411, *supra*, as follows:

In substance, all the dictionaries and encyclopaedias define a basket as a vessel of varying capacity, made of flexible materials such as osiers, cane, twigs, and rushes, commonly interwoven and bound at the top, used for the purpose of holding, protecting, or carrying any commodity. We think such a definition correctly expresses the common understanding of the meaning of the word.

Counsel for the plaintiff contends that the articles at bar are not "vessels" and, hence, do not come within the foregoing definition. Counsel for the defendant stresses the fact that the articles hold or protect a box of paper tissues as demonstrating that they are within the definition.

Webster's New International Dictionary, second edition, 1945, defines a vessel as—

* * * A hollow or concave utensil for holding anything; a hollow receptacle of any kind, often circular in form, as a hogshead, barrel, firkin, bottle, kettle, cup, bowl, etc.

The concept of a vessel ordinarily contemplates a receptacle or container which rests upon a bottom and has raised sides with a principal opening at or near the top through which things are placed or withdrawn. The article at bar has no bottom, and the box of tissues is inserted through the opening where the bottom would be, and the opening at the top is only for the purpose of withdrawing the individual tissues from the box. Consequently, the article at bar is used in a manner not usually associated with vessels, that is to say, with the large, or principal, opening at the bottom, or in what, for a vessel, might be termed upside down fashion.

Of course, if an article were a vessel to begin with, the fact that it might be used in an upside down fashion would not necessarily deprive it of that appellation. However, we do not think that the article at bar, whether right side up or upside down, could properly be described as a vessel of any kind.

Counsel for the defendant has submitted that "a visual examination will lead unerringly to the conclusion that exhibit 1 is a basket and comes within the common meaning of the term basket as used by the Congress in paragraph 411." We have submitted the exhibit to such a visual examination, but come to no such conclusion as that suggested by counsel. To us, the article before us is a *cover* which fits over the top and sides of the article covered much the same as the cover for a cake plate fits over the cake, or the metal domes used to keep food warm fit over the food on a plate. The hood that fitted over the old-fashioned table-type sewing machine is another example which comes to mind, as is the familiar tea cozy.

Each of these articles *contains* the thing with which it is used in very much the same sense that exhibit 1 contains the box of paper tissues, but the primary function in each case and the true identification is as a *cover* rather than as a *vessel* or *container*. The situation is very like that which obtained in the case of *United States* v. *Basket Importing Co.*, 13 Ct. Cust. Appls. 98, T. D. 40941. There, certain bags, woven of straw, and used by ladies for carrying purposes were held not to be covered by the provision for baskets of straw, the court recognizing

a distinction between baskets and bags. It is to be noted that from the description of the articles there involved it would appear that they were vessels made of interwoven flexible materials and used for the purpose of carrying things, and thus might seem to be within the definition set forth in the *Byrnes & Co.* decision, *supra.* Obviously, the court considered the natures of bags and baskets to be so commonly distinguished from one another that the straw bags there involved were not embraced by the provision for straw baskets.

We think a like conclusion is warranted here. The nature of covers is so distinguished from that of baskets that even when the former are made of interwoven flexible materials they are not identifiable with baskets or classifiable under a tariff provision for baskets.

There being no more specific provision in the tariff act under which the covers at bar may be classified, they are properly dutiable at the rate of 16⅔ per centum ad valorem under the provision in paragraph 412, as modified, for manufactures of wood, not specially provided for, as claimed.

Judgment will issue accordingly.