(C.D. 2662)

Royal Cathay Trading Co.
W. J. Byrnes & Co. et al.} *v.* United States

United States Customs Court, First Division

(Decided April 25, 1966)

*Lawrence & Tuttle* and *Glad & Tuttle* (*George R. Tuttle* and *Robert Glenn White* of counsel) for the plaintiffs.

*John W. Douglas*, Assistant Attorney General (*Charles P. Deem* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before OLIVER and NICHOLS, Judges, and WILSON, Senior Judge

NICHOLS, Judge: The merchandise involved in these cases, consolidated at the trial, consists of various articles of rattancore or rattancore and peel imported from Hong Kong and entered at the port of San Francisco in 1957, 1958, and 1962.[1] The articles, except for item No. 4203 (protest No. 59/25702), were assessed with duty at 45 per centum or 42½ per centum ad valorem under paragraph 411 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as baskets wholly or in chief value of wood. It is claimed that the articles are not baskets, but that the items described as compotes, trays, planters, and a sleigh are properly dutiable at 16⅔ per centum ad valorem under paragraph 412 of said tariff act, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373, and T.D. 52476, as manufactures in chief value of wood, not specially provided for, and that the items described as wastebaskets are properly dutiable at 11½, 11, or 10½ per centum ad valorem under said paragraph 412, as modified by T.D. 54108, as furniture. Item No. 4203 was assessed with duty on the planter portion at 42½ per centum under paragraph 411, as modified, and on the stand at 16⅔ per centum ad valorem under paragraph 412, as modified. It is claimed that the article is an entirety dutiable at 10½ per centum ad valorem under paragraph 412, as modified, as furniture. Other claims in the protests have not been pressed.

The pertinent provisions of the tariff act, as modified, are as follows:

[Par. 411, as modified by T.D. 54108.] Baskets and bags, wholly or in chief value of wood (not including bamboo or osier or willow), straw, papier-mache, palm leaf, or compositions of wood, not specially provided for:

\*          \*          \*          \*          \*          \*          \*

|  | A | B | C |
|---|---|---|---|
| Other _____ | \* \* \* | 45% ad val. | 42½% ad val. |

[Par. 412, as modified by T.D. 52373 and T.D. 52476.] Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:

\*          \*          \*          \*          \*          \*          \*

Other (except \* \* \*)_____ 16⅔% ad val.

[Par. 412, as modified by T.D. 54108.] Furniture, wholly or partly finished, and parts thereof, wholly or in chief value of wood, and not specially provided for:

\*          \*          \*          \*          \*          \*          \*

---

[1] The case was tried at San Francisco and was submitted before Judge Lawrence on October 13, 1964. Plaintiffs' brief was filed on May 26, 1965. Defendant's brief was filed on December 15, 1965.

| | A | B | C |
|---|---|---|---|
| Other furniture | 11½% ad val. | 11% ad val. | 10½% ad val. |

At the trial, Stanley Siou, assistant manager of Royal Cathay Trading Co., testified that he had held that position for 3 years and had previously been employed in a similar capacity by China Drygoods of San Francisco, also known as Acme Commercial. Royal Cathay sells "basketwares" all over the United States and Canada. His duties with the two companies included the purchasing of basketware from the Far East and Europe, the supervision of sales, preparation of catalogs, cost calculation, and the supervision of customs entries. He identified the exhibits hereinafter referred to and described the uses of them which he had observed in homes and stores, mainly in San Francisco and (as to exhibit 1 only) New York, and had seen illustrated in national magazines. Although his company had been importing articles for 20 years, the witness' experience was limited to the 4 years he had worked for it and to magazine reading for about 8 years.

Thirty-one exhibits, consisting of 15 articles or sets of articles, 15 illustrations thereof, and 1 additional illustration for which there is no sample, were received in evidence. According to the record, exhibits 9, 11, 19, and 29 are made of rattancore and peel and the remainder of rattancore without peel.

The first question to be determined is whether these articles or any of them were properly classified as baskets. Lexicographers define a "basket" as a vessel of varying capacity made of osiers or other twigs, cane, rushes, splints, or other flexible material, interwoven, and used for holding, protecting, or carrying all sorts of commodities. Webster's New International Dictionary, 1953 edition; Funk & Wagnalls New Standard Dictionary, 1956 edition; Encyclopaedia Britannica, volume 3, page 177, 1947 edition; Encyclopedia Americana, volume 3, page 311, 1953 edition.

Tariff Commission publications have divided "baskets" into classifications, such as fancy baskets, staple baskets, and splint baskets, and have listed many types: Clothes, shopping, picnic, Easter, flower, sewing, bread, pet, wastebaskets, and hampers. Tariff Information Surveys on the Articles in Paragraph 175, 176 of the Tariff Act of 1913, pages 10–36; Summary of Tariff Information, 1921, pages 585–586; Summary of Tariff Information, 1929, pages 951–954; Summaries of Tariff Information, 1948, schedule 4, page 76. The latter notes that baskets are usually made of interwoven or basketwork construction.

Our court of appeals has held that size, shape, appearance, method of construction, and use are factors in determining whether particular articles are baskets or not. *Morimura Bros.* v. *United States, Dow Co.*

*et al.* v. *United States*, 8 Ct. Cust. Appls. 211, T.D. 37438; *United States* v. *Byrnes & Co.*, 11 Ct. Cust. Appls. 68, T.D. 38728; *United States* v. *Quon Quon Company*, 46 CCPA 70, C.A.D. 699.

In *Morimura Bros.* v. *United States*, *supra*, it was held that merchandise consisting of basketwork frames in various shapes with tin linings were classifiable as baskets. The court stated (pp. 213–214) :

* * * The so-called jardinieres and lamp stands are of the familiar size and shape of small waste baskets; the so-called vases and fern pots are flower baskets in form and usefulness. The so-called tray, if filled with flowers or fruit would properly bear the name of flower or fruit basket. Like other baskets these articles are woven of bamboo or of flexible wooden twigs. They are all serviceable for ordinary basket uses, namely, for "holding, protecting, or carrying commodities," and if judged by their external appearance alone they would immediately upon inspection justify the classification of baskets.

In a more recent case, *United States* v. *Quon Quon Company*, *supra*, it was held that woven rattancore articles which looked like shallow, flat baskets, but were sold and used only as tabletops, were not classifiable as baskets. The court stated (pp. 73–74) :

* * * While unhesitatingly granting the truth of the contention that "baskets" in the tariff act provides for baskets "eo nomine," this does not help us in the least to decide whether the imported articles *are* baskets. We are not so trusting of our own notions of what things are as to be willing to ignore the purpose for which they were designed and made and the use to which they were actually put. Of all things most likely to help in the determination of the identity of a manufactured article, beyond the appearance factors of size, shape, construction and the like, use is of paramount importance. To hold otherwise would logically require the trial court to rule out evidence of what things actually are every time the collector thinks an article, as he sees it, is specifically named in the tariff act.

* * * In view of our holding, supra, that the use of the merchandise cannot be ignored in determining whether it is properly classifiable as baskets, and the uncontroverted evidence of actual use of the goods as parts of furniture, namely, table tops, we feel that appellee has sustained its burden of proving that paragraph 412, parts of furniture, more accurately described the articles. * * *

The *Byrnes* case, *supra*, quotes with approval at page 69 a definition the court found in substance in all the dictionaries and encyclopaedias :

* * * a vessel of varying capacity, made of flexible materials such as osiers, cane, twigs, and rushes, commonly interwoven and bound at the top, used for the purpose of holding, protecting or carrying any commodity. * * *

This definition embodies certain inaccuracies, as will be shown hereinafter, and the opinion containing it has been criticized before now, i.e., our appellate court says it contains "somewhat ambiguous language,"

*Quon Quon, supra,* at page 72. A comment on it by Judge Mollison is quoted, *infra.* However, it appears to live on insofar as it establishes that a basket must be a "vessel," used as a container is used. A vessel is a hollow or concave utensil for holding anything. It is for this that our appellate court uses *Byrnes* in the *Quon Quon* case.

This court has had before it a great variety of articles which had been classified as baskets. The following have been held not to be baskets: A rattancore box cover; articles in the shape of lanterns or birdcages, designed to hold flower pots; articles in the shape of hand luggage made of woven rattan; serving trays; snack trays; display figures; wheelbarrows used to hold flowers; napkin holders; and plate mats. *Quon Quon Company* v. *United States,* 41 Cust. Ct. 178, C.D. 2038; *Quon Quon Company* v. *United States,* 41 Cust. Ct. 181, C.D. 2039; *Royal Cathay Trading Co. et al.* v. *United States,* 45 Cust. Ct. 99, C.D. 2206; *Quon Quon Company* v. *United States,* 48 Cust. Ct. 440, Abstract 66729 (none of these *Quon Quon* cases are the one that went to our appellate court in volume 46 CCPA, *supra*) ; *Imported Merchandise Company* v. *United States,* 52 Cust. Ct. 313, Abstract 68437. Woven rattancore or reed cornucopias, used as display items containing natural or artificial flowers and fruits; pie plates, used to pack and market dried fruit, and picnic hampers have been held to be baskets. *The American Import Co.* v. *United States,* 44 Cust. Ct. 97, C.D. 2158; *Quon Quon Company* v. *United States,* 48 Cust. Ct. 440, Abstract 66729.

One question which exhibits 13, 23, and 25 present is whether an article must include interwoven work in whole or part to constitute a basket. This seems to have been stated in *Byrnes, supra,* at page 69 :

\* \* \* All the dictionaries and encyclopaedias define a basket as a vessel \* \* \* *commonly interwoven* \* \* \*. [Italics supplied.]

But the word "commonly" does not necessarily import that a nonwoven article cannot be a basket. It is not clear that the dictionaries and encyclopaedias intend or intended to represent this. The now current Webster refers to stave or splint baskets in an alternative definition. Such baskets were and are made of thin veneer, commonly not interwoven; they were and are chiefly used for shipment and marketing of fruit. All the Summaries of Tariff Information cited above refer to them. The "Survey" on the 1913 Act is relevant since there is no apparent change intended in the meaning of "basket" since they were first designated *eo nomine* in that act. There can be no doubt that the Congress intended splint baskets to be dealt with as baskets in the tariff sense, under the 1930 Act, though not interwoven. The Encyclopaedia Britannica, *supra,* described at page 178 a kind of "coiled" basketwork, also unlike the woven. If these important exceptions went unnoticed, in the *Byrnes* definition, it would seem there could be other exceptions.

In *Quon Quon Company* v. *United States*, 41 Cust. Ct. 181, C.D. 2039, the court had before it two "flower cages" of rattan, one with a woven base, one with no woven part. The Government conceded that the latter was not a "basket," and Judge Mollison commented it was "obviously" the lack of any woven part that induced this concession. But he held the otherwise similar cage, with a woven base, was not a basket either, so in the end the presence *vel non* of a woven part did not determine anything. The Government here contends that all the exhibits, even those without woven parts, are baskets, so we have an issue put before us now that was not before Judge Mollison. The reason for the change in the Government's position would be interesting to know and perhaps helpful, but as so often, it withholds any advice to this court as to the guidelines formerly and now used by customs officers in determining what constitutes a basket.

There does not seem to be any case in which an article, otherwise properly classed as a basket was held not to be one solely for lack of woven work in its composition. If we should so hold here, we would have to discover a new rule; not any that has been acted on previously: the *Byrnes* case rule will not do, because it fails to allow for important exceptions, and is inaccurate in other respects as will be shown. We would have to state a new rule, newly invented.

In *M. Rice Co.* v. *United States*, 45 Treas. Dec. 944, Abstract 47150, an article having no "woven work," apparently, was held to be a basket. It is referred to in the 1929 Summary, page 954.

Looking at the matter afresh, this court notes that its own perception of common speech fails to observe any delimitation of the term "basket" to those of woven construction only, even when the recognized exceptions are *arguendo*, disregarded. The craft of the basket maker has included not weaving alone, but also work with wrapping and with hammer and nails. Much of the charm of baskets as household furnishings arises from their infinite variety in design and construction. There is nothing in the legislative history to suggest that articles which otherwise are baskets are outside that category because one basket maker's technique rather than another has been employed in assembling the materials.

We may add that *Byrnes* states a basket is used for "holding, protecting, or carrying any *commodity*," although a bassinet, used for holding, etc., a baby, is shown by Abstracts 26046 [1] (T.D. 31757) and 51371,[2] to be a basket. Is a baby then a commodity? About the authority of the *Byrnes* definition, it should suffice now to add that Judge Mollison refused in Abstract 66729, *supra*, to apply it to a tray, as more fully discussed elsewhere and refused in *Royal Cathay Trading Co.* v. *United States*, *supra*, to apply it to a suit case, to both of which

[1] *Krauss & Co. et al.* v. *United States*, 21 Treas. Dec. 35.

[2] *American Import Co.* v. *United States*, 49 Treas. Dec. 1150.

it literally did apply. It has long been settled that a bag is not a basket, though likewise within the *Byrnes* definition of one. *United States* v. *Basket Importing Co.*, 13 Ct. Cust. Appls. 98, T.D. 40941. It may finally be added that the *Byrnes* case and definition are not referred to in any Summary of Tariff Information.

We conclude that a basket, otherwise qualifying as such, is not excluded from that classification by reason of embodying no woven work. Exhibits 23 and 25 are discussed immediately below and 13 later on because of other special problems it offers.

Exhibit 23 consists of a bare, rigid framework suggesting a duck, the body being in the shape of a bowl, the head and bill a handle. The woody stems forming the frame have been bent and nailed together. No part of the article is woven. It is described on the invoice as a rattancore duck tray. Mr. Siou admitted that the company's catalog described the item as a basket, but said he did not buy or sell it as a basket but as a duck tray or bowl. He said it is used as a centerpiece for a table or to display merchandise and is occasionally sprayed. The weight of this evidence is discussed, *infra*. The article is made of basket materials and is, from its shape, obviously intended for use as a container or vessel for holding fruit, sweets, or other contents large enough not to fall between the frames. The collector's classification of the article as a basket is not shown to be erroneous and is, therefore, sustained.

Exhibit 25 is a decorative wrapped rigid framework in the shape of a coolie hat with a chain for hanging it in inverted fashion. It has no woven part. The witness called it a single tier Victorian hanging planter and said it is used in homes and department stores for display or as a container for artificial flowers. It does not possess the characteristics of a container or vessel but is a mere frame on which artificial flowers might hang or on which a proper container might be placed. It is dutiable as manufactures of wood, the sample as a "potent witness" establishing the incorrectness of the collector's classification.

Exhibit 15 is in the shape of an old-fashioned sleigh. The body portion is of interwoven material but the runners are not. The witness stated that it is used as an ornamental piece on the mantel or as a centerpiece on a table, usually sprayed in holiday colors, and displayed during Thanksgiving and Christmas. It is never bought and sold as a basket and the witness had never seen it used as a planter. The shape is such that any use to hold, protect, or carry anything would be fugitive and marginal; most objects would fall out. This item is similar to the wheelbarrow involved in *Imported Merchandise Company* v. *United States*, *supra*, which the court described as follows (pp. 313–314) :

* * * The wheelbarrow (plaintiff's exhibit 1) consists of a bucket, measuring 6 inches in length, 5½ inches in width, and 3 inches in

height, that sets on a yoke which extends sufficiently far back to form two handles. Affixed to the yoke is a wheel, and, below the handles, are pieces of rattancore, bent in such a manner as to form a leg under each handle. The wheelbarrow, with flowers or fruit usually placed in the open bucket, is used as a decorative piece on the table or the mantelpiece. * * *

The court held that an examination of the sample was sufficient to show its identity and that the evidence established that it was not a basket. It was held dutiable as manufactures of wood.

On the authority of that decision, and on the basis of the sample which is a "potent witness," we hold that the sleigh is not a basket and is dutiable under paragraph 412, *supra*, as manufactures of wood. The presumption of correctness of the collector's classification is overcome.

Exhibits 1 and 29, which are designated as compotes, are made of one piece of basketware, each so shaped as to form a bowl-shaped portion with a base and stem. Mr. Siou testified that he had seen these articles used in homes and shops as ornamental items to hold fresh or artificial fruit or for decorative purposes. He said they are bought and sold as fruit compotes and not as baskets. Compotes properly are bowl-shaped dishes of glass, porcelain, or metal, usually with a base and stem, from which fruits, nuts, or sweets are served. The instant merchandise is suitable for the same uses, except that most nuts would fall through the interstices. No other use can be conceived. These articles are baskets, the presumption of correctness of the collector's classification not being overcome.

Exhibit 11 consists of three articles in the shape of coolie hats in different sizes, strung together with rattancore chains, so that they may be suspended inverted. The "hats" are solidly interwoven of rattancore and peel and the chains are twisted rattancore. According to the witness, the article is used as an ornamental item in the home, either empty or to hold artificial flowers. It is also used in department stores for display empty as an ornament and is occasionally sprayed. The three hats in their upside-down position can hold something, but hardly can be characterized as containers or vessels, and so are not baskets. Their hollowness or concavity, is slight and incidental; three flat discs suspended by chains would hold flowers equally well. As exhibit 12 shows, the flowers are not kept inside but hang from the edges. These exhibits are "potent witnesses" overcoming the presumption of correctness of the collector's classification. The articles are manufactures of wood.

We turn next to the trays, which are of various shapes and sizes, all are interwoven, and are capable of holding or supporting something. Some of them are clearly used for carrying things.

In *United States* v. *Byrnes & Co.*, *supra*, it was held that a basket-

work tray was dutiable as a basket on the ground that the provision for baskets in the Tariff Act of 1913 was more specific than that for manufactures of wood and on the further ground that the article was interwoven as baskets commonly are and was adapted and used to hold, protect, or carry commodities. In the course of the opinion, the court quoted a definition of "tray" from Webster's New International Dictionary as "A shallow, wooden trough or bowl, or a basket, for domestic uses." In the 1930 edition of said dictionary, the notation "Obs. or Dial. Eng." appears after a similar definition, and in the 1934 edition, reference to "basket" is omitted.

In the *Quon Quon Company* case reported as Abstract 66729, it was held that serving trays and snack trays were not baskets. The court stated (pp. 441–442):

> We think it is fair to say that the distinction between a tray and a basket is not always readily apparent. Something which may be a shallow basket may also be referred to as a tray. In this category, may be cited the familiar table article, the bread tray, which is frequently called a bread basket. But we think it also fair and correct to say that there are articles called trays which are not necessarily baskets—in fact, are quite distinct and different therefrom. In this category, we think, are the serving trays at bar.

> \*     \*     \*     \*     \*     \*     \*

> Collective exhibits 1 and 2 are serving trays. They are not "vessels" in the sense that baskets are vessels, i.e., hollow or concave utensils (Webster, *op. cit.*), and we do not think that anyone in ordinary speech would call a serving tray a "basket." We can, therefore, discern no valid reason why they should be classified for duty purposes as such. The *Byrnes* case is not ironclad authority on the subject, for it admittedly was submitted for decision upon the scantiest of records, the mere introduction of a sample, and without the benefit of a brief on behalf of the losing party. We do not consider it authority for the proposition which seems to be urged by the defendant that all trays made of interwoven basket materials are *ipso facto* baskets.

Acc: *Dolliff & McGrath* v. *United States*, 69 Treas. Dec. 756, T.D. 48286.

Exhibit 20 in the instant case is an oval shaped, fairly shallow, basketware tray, having two handles. Mr. Siou stated that it is used as a serving tray in the home for serving drinks and food and that he had never seen it used for any other purpose. Exhibit 21 is a more or less triangular shaped flat article having a ring compartment at the narrow end and having a handle. The witness stated that it is a snack tray for holding food and drink and that the circular portion is to hold a glass. He added that illustrative exhibit 22 shows its use as a chip and dip tray with a glass in the circular part for the dip. Both exhibits 20 and 21 are similar to the trays which were held not to be baskets in Abstract 66729 and may be so held on the author-

ity of that case. Their hollowness or concavity is too slight. Anything they held would be on them, rather than in them. As "potent witnesses" they overcome the presumption of correctness of the collector's classification.

Exhibit 17 is an irregularly shaped, fairly flat, shallow, interwoven article, described on the invoice as a modern shaped tray. Mr. Siou testified that it is used as a centerpiece on a table or for serving, and is occasionally painted or sprayed. It is also used, he said, as a wall plaque by attachment to the wall with metal brackets and is occasionally decorated with dried vegetable material or nuts and cones. The witness sold it as a tray and not as a basket. Because of its shape, shallowness, and uneven undersurface, it does not appear that it would have practical use for holding and carrying. It is no more a basket than were the trays in Abstract 66729. Our holding on exhibits 20 and 22 applies to this *a fortiori*.

Exhibit 3 consists of a rectangular shaped article of basketwork having four compartments lengthwise and one crosswise. The witness called it a silver tray and said it is used in kitchens in a drawer for separating the various silverware pieces, such as forks, knives, and spoons. It is obviously designed and used for holding articles and perhaps incidentally to transport them, from kitchen to dining area, for example. It is deeper than the serving and snack trays, but resembles a drawer or trunk tray. It contains things rather than merely supporting them as do serving trays. It is a vessel or container since the silverware would be in it, rather than on it. The collector's classification of the article as a basket is not shown to be erroneous and, therefore, is sustained.

Exhibit 27 consists of six nested rectangular interwoven trays. Mr. Siou testified that they are used in homes or offices on desks to hold letters. They are always imported in nests of six and are bought and sold by the witness as letter trays and not as baskets. The Tariff Information Surveys Act of 1913, *supra*, page 17, listed willow letter trays under baskets, but subsequent Summaries of Tariff Information contain no references to letter trays. An examination of some of the articles composing the exhibit indicates that they might well be used for purposes other than holding letters—holding and transporting commodities, for example. One of the articles in the *Quon Quon* case, Abstract 66729, was an interwoven article of the size and shape of a pie plate. As to it, the court held (p. 442):

\* \* \* While the evidence given as to it indicated that it could be used to hold a paper plate containing hot food, it appeared that its major use was by fruit packers to pack and market dried fruit, principally around holidays. It is a compartively shallow article, and, in its use with dried fruit, it is covered with cellophane. Such an article,

we think, is in the borderline category between a tray and a basket. There is evidence that a fork is packed with the fruit to assist in serving the contents, but we think that, in its appearance and use, i.e., it is hollow and concave and used to hold and transport things, it partakes more of the nature of a vessel, and, hence, of a basket, than it does of a tray.

The nested trays in exhibit 27 are each a container or vessel, designed to hold things in, rather than on, themselves. Therefore, they satisfy the requirements for baskets and the collector's classification is not shown to be wrong by the evidence herein.

The wastebaskets (exhibits 5, 7, 9, and 31) are in various shapes, dimensions, and designs. Some are nested. Mr. Siou testified that they are bought, sold, and used as wastebaskets and for no other purpose. Plaintiffs claim that they are not baskets within the contemplation of paragraph 411, *supra*, but are articles of furniture. All of the articles are made of basketwork and by their appearance, construction, shape, and designation are baskets. In tariff information publications which discuss the predecessors to paragraph 411, wastebaskets were included under the listings of baskets. Tariff Information Surveys Act of 1913, *supra*, pages 10, 16, and 34; Summary of Tariff Information, 1929, page 951.

In *Krauss & Co.* v. *United States*, 2 Ct. Cust. Appls. 17, T.D. 31574, a decision of the Board of General Appraisers had held that a substantial willow basket to hold soiled clothes for the laundry was "house furniture" under the 1909 Act. This was reversed and the article classed as a basket. This case is called to the attention of Congress in the 1913 Act Survey, *supra*, at page 35. A wastebasket would seem *a fortiori*.

At the hearings on the bill which became the Tariff Act of 1930, a brief was presented on behalf of the domestic basket manufacturers. (Tariff Readjustment—1929 Hearings before the Committee on Ways and Means, House of Representatives, 70th Congress, 2d session, volume 4, schedule 4, pp. 2760–2763.) It was stated therein that it was difficult to draw the line between "furniture" and "baskets" and the question was raised as to whether bassinets, willow containers for firewood, porch and window baskets, wastepaper baskets, and other products made of basketware for household utility or decorative use, were classifiable as baskets or as furniture. As a remedy, it was proposed that the tariff provision cover "baskets and basketwork." The same proposal was made to the Senate Finance Committee (Tariff Act of 1929, Hearings before a Subcommittee of the Committee on Finance, United States Senate, 71st Congress, 1st session, volume IV, schedule 4, pp. 332–335), but the proposal was not adopted.

Since the Congress had information before it, as indicated above, that wastebaskets were classed as baskets, not furniture, and the Summary of Tariff Information (1929) told it at page 954 that bassinets were held to be baskets, it would seem it omitted to change the statute as recommended because the law already provided as the basket industry wished.

It appears that Congress contemplated that all baskets would fall within paragraph 411 and not be classed as furniture when such articles were, in fact, baskets and were composed of the required material. Therefore, the wastebaskets here involved, which are in fact baskets, and are composed of rattancore (wood), were properly classified by the collector as baskets under paragraph 411, *supra*.

This leaves exhibit 13, which is described on the invoice as a rattan-cane planter with stand and liner, and is referred to on exhibit 14 as a Victorian style planter. It consists of a cylindrical frame with a metal liner and a separate frame stand. The frame of both parts appears to be made of rattancore which has been bent and shaped and part of it wrapped but none of it is woven. It is rigid rather than flexible. Mr. Siou testified that the article is used as a planter and bought and sold as a unit. In illustrative exhibit 14, it is depicted with a potted plant within the metal liner.

This article was assessed with duty as two items; the container and liner as a basket, and the stand as a manufacture of wood. It is claimed to be an entirety dutiable as furniture.

In *Morimura Bros. v. United States*, *supra*, articles resembling, as the court's description shows, the upper part of the article at bar (except for being woven) were held to be baskets. The court did not consider the metal liner to require a different classification, and, accordingly, it cannot be so regarded here.

The claim that the article is furniture cannot be sustained. It is used to hold something; it is a container or vessel. The rattancore material, though not woven, is fashioned by nailing and wrapping into characteristic basket designs. The ends of stalks are coiled up in a manner resembling those illustrated in the Encyclopaedia Britannica article, *supra*, at page 179, except for not being wrapped. The absence of woven components is not determinative. As shown above, the intention of the Congress is that any article which is, in fact, a basket is not furniture. This is a basket.

Whether the article is an entirety need not be determined. If it is, it is dutiable at the rate for baskets, both upper and lower, and the proper rate then being higher than the assessed rate, the protests cannot be sustained.

Because the court in this case has been guided by the views of our appellate court expressed in the *Quon Quon* case, *supra*, 46 CCPA, at

page 73, that for an article to be classed as a basket it must be used as a basket is used, i.e., as a vessel or container to hold, protect, or carry commodities (or babies), the presumption of correctness of the collector's classification requires us to suppose that before classifying the articles here involved, each of them, as baskets, he found that each of them was used for the above basket purposes. The testimony of the sole witness, Mr. Siou, is insufficient to rebut that presumption.

The witness' testimony based on his reading of magazines was plainly hearsay. An objection on that ground, or motion to strike, would have confronted us with a different question than we actually have, inasmuch as hearsay admitted without objection suffers from no further infirmity derived from its hearsay character.

The customs courts allow responsible executives concerned with designing, specifying, importing, promoting, and selling merchandise to testify what its uses are, on the hypothesis that such persons must of necessity know the uses. See discussions in *F. B. Vandegrift & Co., Inc.* v. *United States*, 56 Cust. Ct. 103, CD 2617 (February 15, 1966) ; *United States* v. *American Express Co.*, 44 Cust. Ct. 779, 784, A.R.D. 120. In the latter case, Judge Richardson quotes with approval the following excellent statement from *Transcontinental Petroleum Co.* v. *Interocean Oil Co.*, 262 F. 278, 282 (8th Cir. 1919) :

Much of what officials of large enterprises know of their operations is necessarily learned "in the course of business" and from associates and employés, through conferences, conversations, letters, reports, records, and the like. It is upon such information that the business is directed and carried on. Considered narrowly and technically it might be regarded as proceeding in considerable measure from hearsay, but absolute, first-hand, personal knowledge is not as a rule practicable and is not required as an invariable rule of evidence. As Lord Ellenborough said, "the rules of evidence must expand according to the exigencies of society." Pritt v. Fairclough, 3 Campbell, 306. Cross-examination into the scope of the jurisdiction and duties of the officials and the sources and extent of their information may affect the weight of their testimony, which is for the jury.

It goes without saying that testimony of how an article is used, covering an adequate area of the United States, would have to be opinion based in part on hearsay, which surely might be business communications and perhaps trade publications, or both. Presumably the witness' experience in his own community would give him the means of evaluating the accuracy of what he read. The foundation of personal, first-hand experience is necessary to leaven the lump and must be substantial. We would not seriously consider such testimony based wholly on reading, or by a person whose actual pertinent experience was not in a position of responsibility.

Here the witness was "assistant manager" of the plaintiff-importer, and at the time of trial had been for 3 years. Before then he was employed by another importer. In his current job he was responsible for both purchasing and selling imported basketware. His employer sells "All over the United States, Canada, Hawaii," but if the witness ever left San Francisco, the port of entry, to further these objects, the fact does not appear. One item only, exhibit 1, he said he saw "in homes—in New York." This we must infer was a social occasion, as he never mentioned doing any business in New York. We conclude that for testimony about uses nationwide the leaven of personal non-hearsay experience was inadequate.

As regards the hearsay knowledge, he makes no mention of business communications. It is entirely a reading of magazines which is the alleged foundation. It is not stated whether these are magazines of general circulation or trade publications of special interest. Nor is it explained how these publications informed the witness about the uses of his products. It is not like a doctor's testimony, where we would not need a diagram or primer to elucidate the situation for we could take judicial notice how in forming an opinion he would be aided by professional publications.

We do not hold that this testimony is without weight because it is opinion testimony; we so hold because it is opinion testimony not shown to be based on facts. The Government objected to the witness being allowed to give opinion testimony, and the objection was over-ruled, but we do not think this obliges us to give weight to the testimony, as the fact-finding tribunal; in point of fact, the hearing judge himself later on brought out by questions from the bench, the lack of factual foundation, on which the Government now relies.

We may add that there is no showing that the articles involved are not sold nationwide; plaintiff itself showed they were. Nor is there any particular reason to suppose that they are used in the same manner in all parts of the country. Hence, if we restricted Mr. Siou's testimony to the San Francisco area—as to which no doubt his use knowledge is extensive—this would not do plaintiff any good.

As a final comment, evidence of what the importer or his agents call an article has no real value towards establishing what it is called in common speech, or in the trade and commerce of the United States.

Therefore, we have been governed by the above presumed collector's findings in all instances except where the article itself, a potent witness, shows that such findings involve impossibilities or extreme improbabilities. In the cases, e.g., of the sleigh, exhibit 15, the coolie hat planters, exhibits 11 and 25, and the shallow trays, exhibits 17, 20, 21, and 22, the samples and pictures tell us that the articles cannot be used effectively as containers or vessels and, therefore, are not so used.

The protests are sustained as to the items listed below, which are held dutiable at 16⅔ per centum ad valorem under paragraph 412 of the Tariff Act of 1930, as modified, *supra*, as manufactures in chief value of wood, not specially provided for:

| Protest | Entry | Item | Description |
| --- | --- | --- | --- |
| 59/23363 | 28893 | 824A3 | Rattancore coolie hat planter |
| 63/5671 | 48791 | 3482A | Rattancore sleigh |
| 63/7401 | 55872 | 3756 | Rattancore modern shape tray |
| 63/7488 | 46383 | 4378 | Rattancore serving tray |
| 63/7488 | 46383 | 403 | Rattancore snack tray |
| 63/7488 | 50716 | 4208 | Rattancore hanging planter |

As to all other items, and in all other respects, the protests are overruled.

Judgment will be rendered accordingly.