**F. W. MYERS & CO., Inc.**

v.

**UNITED STATES.**

C.D. 3180, Protest No. 65/25836–3689.

United States Customs Court,
First Division.

Oct. 31, 1967.

———◆———

Barnes, Richardson & Colburn, New York City (Joseph Schwartz and James S. O'Kelly, New York City, of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Arthur H. Steinberg, New York City, Trial Atty.), for defendant.

Before WATSON and BECKWORTH, Judges.

BECKWORTH, Judge:

The merchandise involved in this case, described on the invoice as "Insulpanel Type AAA," was imported from Canada and entered at the port of Champlain, New York, on February 10, 1964. It was assessed with duty at 5 cents per pound and 9 per centum ad valorem under item 245.80 of the Tariff Schedules of the United States as building boards, not specially provided for, under the inferior heading laminated boards, bonded in whole or in part or impregnated with synthetic resins. It is claimed that the merchandise is properly dutiable at 0.225 cent per pound under item 518.44 of said tariff schedules, as articles, other, in part of asbestos and hydraulic cement.

Item 245.80 of schedule 2, part 3, of the Tariff Schedules of the United States provides as follows:

Building boards, not specially provided for, whether
   or not face finished:
      Laminated boards bonded in whole or in part, or
         impregnated, with synthetic resins .......... 5¢ per lb. × 9%
                                                              ad val.

---

Headnote 1(e) of part 3 of schedule 2 defines "Building boards" as follows:

(e) *Building boards:* Panels of rigid construction, including titles and insulation board, chiefly used in the construction of walls, ceilings, or other parts of buildings.

Item 518.44 of schedule 5, part 1, subpart F, of said tariff schedules provides:

Articles in part of asbestos and hydraulic cement:
   *    *    *    *    *    *    *    *    *    *
   Other ........................................ 0.225¢ per lb.

---

General Headnotes, Tariff Schedules of the United States provides:

10. *General Interpretative Rules.* For the purposes of these schedules—

   (a) the general, schedule, part, and subpart headnotes, and the provisions describing the classes of imported articles and specifying the rates of duty or other import restrictions to be imposed thereon are subject to the rules of interpretation set forth herein and to such other rules of statutory interpretation, not inconsistent therewith, as have been or may be developed under administrative or judicial rulings;

   *    *    *    *    *    *

   (c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; but, in applying this rule of interpretation, the following considerations shall govern:

   *    *    *    *    *    *

      (ii) comparisons are to be made only between provisions of coordinate or equal status, i. e., between the primary or main superior headings of the schedules or between coordinate inferior headings which are subordinate to the same superior heading;

At the trial, plaintiff presented the testimony of two witnesses and introduced in evidence a sample of the merchandise in question as plaintiff's ex-

hibit 1. Defendant's evidence consisted of a catalog (defendant's exhibit A), describing and illustrating the composition, manufacture, physical properties, and uses of the merchandise.

Elbert D. Byers, manager of the technical department of the exporter in this case, Atlas Asbestos Company of Montreal, Canada, testified that he is a graduate in mechanical engineering from McGill University and has been with the company for 15 years. His work has been in conjunction with the method of manufacture of products, control of quality, and work on the development of new products. His company manufactures a number of products, most of them containing asbestos, including asbestos cement products, which are building materials, asbestos cement pipe, insulation, and a polyester fiberglass sheet. The witness was familiar with the merchandise involved herein and had seen it manufactured. When sold in Canada it is called Tripanel and when sold in the United States, Insulpanel.

The witness testified that the product consists of three components: Two facing sheets which are 1/8 inch asbestos cement sheets, a core which is an asphalt impregnated fiberboard, and glue which is used to adhere the components together. First, the asbestos cement sheets are manufactured from asbestos fiber and hydraulic cement. Then the core material is given a coating of glue on both sides. Thereafter a stack of 20 sheets is made by placing asbestos cement sheets alternatively with the core sheets. These are clamped together until the glue is set. The bonding agent is polyvinyl alcohol which consists in part of synthetic resin. According to the witness, the percentage of asbestos in the facing sheets is 26.67 percent and the cement 73.33 percent. The two facing sheets weigh 70 pounds, the core 5 pounds, and the glue 1.6 pounds. The standard width of the material is 4 feet and it is in lengths of from 6 to 12 feet. It can be made to specification.

The witness testified that his company used other types of cores as well as that involved herein. It used polystyrene B board, polyurethane, polystyrene foam-type core, and fiberglass. According to the witness, his company could use any type of core that the customer required.

The second witness was Norman Barr, vice president of Atlas Asbestos Company. He testified that he was in charge of marketing and was responsible directly for all sales and marketing activities of the company. He personally called on customers and users of the product and has become familiar with its uses. According to the witness, the primary uses are as a fire-resistant curtain wall in commercial building construction, interior office partitions, fire-resistant office partitions, office partitions where an acoustical insulation quality is desired, and as a roof deck in small one-story buildings. In explaining the meaning of the term "fire-resistant curtain wall," he stated:

On steel-frame buildings it is customary to apply a non-load bearing wall exterior wall of, a variety of materials can be used, of which Insulpanel would be one. It may be decorated or undecorated. This is the exterior cladding or wall of the building on that type of construction.

He had personally observed the product used to make interior wall panels, partitions, and curtain walls.

He stated that defendant's exhibit A was his firm's product catalog describing Tripanel in its various forms with the various interior core materials that are used with the product. He said that the catalog was sent to potential customers, architects, and design engineers.

The parties are in agreement that the merchandise involved herein is both building boards, as defined in headnote 1(e) of schedule 2, part 3, supra, and as provided for in item 245.80, supra, and articles in part of asbestos and hydraulic cement, as provided for in item 518.44, supra. The issue is which of these provisions more specifically provides for the imported merchandise.

Plaintiff claims that the classification of the merchandise as building boards

under item 245.80 rests upon a use provision qualified by a "not specially provided for" clause; that item 518.44 contains no such limiting language and sets forth a precise description of the imported merchandise, and that, therefore, the merchandise is properly classifiable under the latter.

■ It is a well settled rule of specificity that a use provision prevails over a descriptive or *eo nomine* provision, unless there is a clearly expressed congressional intent to the contrary. M. Pressner & Co. v. United States, 42 CCPA 48, C.A.D. 568; United States v. Lansen-Naeve Corp., 44 CCPA 31, C.A.D. 632; United States v. S. H. Kress & Co., 46 CCPA 135, C.A.D. 716.

In United States v. Lansen-Naeve Corp., supra, however, it was held that a use provision, qualified by a "not specially provided for" clause, did not prevail over a competing provision which aptly and precisely described the merchandise. The merchandise consisted of ground and polished cylindrical steel rolls. The competing provisions of the Tariff Act of 1930 were paragraph 344 which provided for "cylindrical rolls ground and polished" and paragraph 372 which provided for "parts of machine tools." The parties were in agreement that the cylindrical steel rolls were parts of a rolling mill and that a rolling mill was a machine tool. The court cited a number of cases holding that a "not specially provided for" clause in a use provision excluded therefrom articles enumerated elsewhere by description or *eo nomine* designation. It then stated (p. 34):

* * * This principle is subject only to the qualification that the competing provision must be more than an unlimited general description of the merchandise. It must aptly and specifically name or describe the goods in question. Drakenfeld & Co. v. United States, 2 Ct.Cust.Appls. 512, T.D. 32248; Drakenfeld & Co. v. United States, 9 Ct.Cust.Appls. 124, T.D. 37979; United States v. Snow's United States Sample Express Co., 6 Ct.Cust. Appls. 120, T.D. 35388. That is to say, the goods must actually be *specially* provided for. [Italics quoted.]

In Comstock & Theakston v. United States, 12 Ct.Cust.Appls. 502, T.D. 40698, cited in the *Lansen-Naeve* case and relied on by plaintiff here, the merchandise consisted of titanium oxide in physical combination with barium sulphate, used as a pigment in compounding paints. It was assessed with duty under paragraph 91 of the Tariff Act of 1922 as a compound or mixture containing titanium and was claimed to be dutiable under paragraph 68 which covered pigments, not specially provided for. The court did not sustain the claim, pointing out that paragraph 68 was a catchall paragraph, not intended to include such pigments as had been covered elsewhere; that the word "pigment" did not connote use except in a very general way, and that compounds and mixtures containing titanium had received special attention by Congress and had been singled out for special consideration.

On the other hand, in Jack and Jill Togs, Inc. v. United States (W. T. Grant Co., Party in Interest), 47 CCPA 149, C.A.D. 749, it was held that, in order for a competing provision to take merchandise out of a use provision with a "not specially provided for" clause, it would in fact have to describe the goods more specifically. The merchandise in that case consisted of cotton corduroy wearing apparel. The competing provisions of the Tariff Act of 1930 were paragraph 909, which provided for pile fabrics and all articles made from such pile fabrics, including corduroys, and paragraph 919, which covered clothing and articles of wearing apparel of every description, wholly or in chief value of cotton, not specially provided for. The court quoted from the Summary of Tariff Information, 1929, which stated that paragraph 919 covered cotton clothing and articles of wearing apparel, not specially provided for, and that the articles specially provided for elsewhere were garters, suspenders, braces, knit goods, handkerchiefs, apparel ornamented with

embroidery or lace. The court pointed out that paragraph 909 did not specifically provide for or even mention clothing or wearing apparel, and that its provision for pile fabrics and articles made therefrom was no more than an unlimited general description of the merchandise. It held, therefore, that the cotton corduroy wearing apparel before the court was more specifically provided for under paragraph 919.

■■ The presence of a "not specially provided for" clause lessens the relative specificity of a provision only where the competing provisions are otherwise equally applicable to the involved merchandise, or where the merchandise is *eo nomine* provided for in a competing provision. United States v. Snow's United States Sample Express Co., 6 Ct.Cust. Appls. 120, T.D. 35388; United States v. Garlock Packing Co., 32 CCPA 79, C.A.D. 289. The words "not specially provided for" do not lessen the relative specificity of the modified phrase itself when contrasted with other competing provisions of the law. Knauth, Nachod & Kuhne v. United States, 4 Ct.Cust.Appls. 58, T.D. 33307.

In United States v. Herman H. Sticht & Co., 22 CCPA 40, T.D. 47048, the court pointed out (p. 44):

* * * it is well settled by this court that if an article is more specifically described in a paragraph containing the "not specially provided for" clause than in a paragraph not containing such a clause, the presence of the clause in the one paragraph will not have the effect of excluding the article from the paragraph where it is more specifically provided for. Knauth, Nachod & Kuhne v. United States, 4 Ct.Cust.Appls. 58, T.D. 33307; Lowenthal & Co. v. United States, 6 Ct.Cust. Appls. 209, T.D. 35464; Comstock & Theakston v. United States, 12 Ct.Cust. Appls. 502, T.D. 40698.

In United States v. Alltransport, Inc., 44 CCPA 149, C.A.D. 653, the court held that absorbable gelatin sponges used in surgery to prevent bleeding were dutiable as medicinal preparations, not specially provided for, rather than as manufactures in chief value of gelatin. The court stated (p. 154):

Having established that "absorbable gelatin sponges" is embraced by the language of paragraph 41, as well as that of paragraph 5, the question which is presented in this case resolves itself to an issue of relative specificity. It has been repeatedly held by this court that, subject to a clearly shown contrary legislative intent, a "not specially provided for" clause in a use provision excludes therefrom articles enumerated elsewhere by an *eo nomine* designation. Germania Importing Co. v. United States, 6 Ct.Cust.Appls. 467, T.D. 35988. This principle is subject, however, to the qualification that the competing provision must be more than an unlimited general description of the merchandise. It must aptly and specifically name or describe the goods, i. e., the goods must actually be specially provided for. See, for example, United States v. Snow's United States Sample Express Co., 6 Ct.Cust.Appls. 120, T.D. 35388, wherein our predecessor court held that shirt bosoms of tucked cotton material were more specifically described by the terminology "wearing apparel composed of cotton or of cotton in chief value made up or manufactured in part," than by the language "articles made up in part of tuckings of whatever yarns, threads, or filaments composed" since the former more closely describes and identifies the goods.

"Medicinal preparations" in paragraph 5 "is equivalent to an enumeration of every medicinal preparation not otherwise specially provided for by name." United States v. Hillier's Son Co., 14 Ct.Cust.Appls. 216, T.D. 41706; and, as stated in the United States v. Snow's United States Sample Express Co. case, the clause "not specially provided for" lessens the relative specificity of a provision only where competing provisions are other-

wise equally applicable to the involved merchandise.

In Vandegrift Forwarding Co., Inc. v. United States, 39 Cust.Ct. 114, C.D.1915, the merchandise consisted of variable speed control gears which were parts of machine tools and also devices for controlling the speed of arbors. The court held that they were more specifically provided for as parts of machine tools, not specially provided for, than as devices for controlling the speed of arbors. It referred to the principle set out in United States v. Herman H. Sticht & Co., quoted above, and distinguished the Lansen-Naeve Corp. case as follows (pp. 118–119):

> The recent case of United States v. Lansen-Naeve Corp., supra, relied upon by defendant herein, does not disturb this principle. That case stands for the proposition that where a use provision is qualified by the phrase "not specially provided for" it is subordinate to a descriptive or *eo nomine* provision, but only where the latter "aptly and specifically name[s] or describe[s] the goods in question. * * * That is to say, the goods must actually be *specially* provided for. [Italics quoted.] Where, however, a descriptive provision merely includes an article within its general terms, a designation by use, even though limited to articles, not specially provided for, would be controlling.

The competing provisions in the instant case are "building boards" and articles in part of asbestos and hydraulic cement. The term "building boards" is defined in the headnote to schedule 2, part 3, as "[p]anels of rigid construction, including tiles and insulation board, chiefly used in the construction of walls, ceilings, or other parts of buildings." The merchandise here consists of panels of rigid construction, serves as insulation, and is chiefly used in the construction of walls, ceilings, or other parts of buildings. It is thus aptly and specifically described by the term "building boards" as defined by the Tariff Schedules of the United States.

On the other hand, the provision for articles in part of asbestos and hydraulic cement does not specifically provide for or even mention "building boards." It is a provision which covers the classification generally of articles in part of asbestos and hydraulic cement, and, insofar as the merchandise at bar is concerned, it contains nothing more "than an unlimited general description of the merchandise." Cf. Jack and Jill Togs, Inc. v. United States, supra.

Furthermore, in the instant case, an analysis of schedule 2, part 3 of the Tariff Schedules of the United States indicates that the "not specially provided for" clause was added to the provision for "building boards" to avoid any possible conflict with previous items, some of which included specially described articles which were also building boards, rather than to lessen specificity in general.

■ From the above, we conclude that the instant merchandise is more specifically covered by the provision for "building boards, not specially provided for," than under the provision for "[a]rticles in part of asbestos and hydraulic cement."

■ However, since rules of specificity must give way to a clearly shown contrary legislative intent (National Carloading Corp. v. United States, 44 CCPA 77, 82, C.A.D. 640) and congressional intent is the master rule of construction (United States v. Herman H. Sticht & Co., supra), it is pertinent to examine the history of the present provisions to determine whether that intent requires a different construction.

The Tariff Act of 1922 provided in paragraph 1401 for manufactures wholly or in chief value of asbestos. In a case arising under that act, United States v. Stone & Downer Co. et al., 16 Ct.Cust. Appls. 82, T.D. 42732, it was held that asbestos shingles were dutiable under that provision rather than free of duty as shingles. After finding that Congress intended the word "shingles" to

refer only to wooden shingles, the court added (p. 85):

> In addition to what was said in that case [Hampton, Jr., & Co. v. United States, 12 Ct.Cust.Appls. 490, T.D. 40695], an inspection of the statute, paragraph 1401, discloses that it was the evident intent of Congress to include therein all manufactures of asbestos. The paragraph does not contain a "not specially provided for" clause, which it would, obviously, have contained if it had been intended that roof covering, made of asbestos, should be elsewhere classified. The Congress plainly had in mind the protection of the American asbestos manufacturing industry, for, by paragraph 1515, unmanufactured and crude asbestos is made free of duty, while, as we have seen, any manufactured product thereof is made dutiable by said paragraph 1401. * * *

When the Tariff Act of 1930 was being prepared, Congress had before it the Summary of Tariff Information, 1929, which included the following among the articles described as asbestos manufactures (p. 1882):

> Asbestos millboard is made of asbestos fiber with a small percentage of cementing or sizing material, built up in thin layers, in sheets 42 by 48 inches, and usually from one-sixteenth to one-half inch in thickness. Asbestos millboard is used chiefly for high-pressure gaskets and packings, insulation lining for stoves, aircell pipe covering, roofing, building paper, and other purposes in the building trades.

Paragraph 1501 of the Tariff Act of 1930, enacted thereafter, provided in subparagraph (a) for asbestos yarns and fibers and all manufactures thereof; in subparagraph (b) for molded articles in part of asbestos, containing any binding agent other than hydraulic cement or synthetic resin; in subpargarph (c) for asbestos shingles and articles in part of asbestos, if containing hydraulic cement or hydraulic cement and other materials; and in subparagraph (d) for all other manufactures of which asbestos is the component material of chief value.

A later publication of the Tariff Commission, Summaries of Tariff Information, 1948, volume 15, part 1, page 2, states as to the articles covered by paragraph 1501(c):

> Asbestos-cement shingles and siding constitute the most important asbestos-cement products; other articles made of asbestos and cement include pipe, plain and corrugated sheets and planks, and asbestos flexible roofing materials. Most of these products are used by the building trade.

Under the 1930 Act, it was held that engine packing composed in chief value of asbestos yarn, containing 2 percent or more of graphite, was dutiable as articles in part of graphite under paragraph 216, rather than as articles of asbestos yarn under paragraph 1501(a). United States v. Garlock Packing Co., supra. The court stated (p. 83):

> The term "articles," as used in paragraph 216, supra, is a more specific designation than the term "manufactures of" as used in paragraph 1501 (a), supra. Bough v. United States, 14 Ct.Cust.Appls. 60, T.D. 41575, and cases therein cited. Accordingly, we are of the opinion that the provision for articles or wares, composed wholly or in part of graphite, contained in paragraph 216, supra, although accompanied by the clause "not specially provided for," is a more specific designation for the merchandise here in question than is the provision for manufactures of yarn of asbestos or of asbestos and any other spinnable fiber, contained in paragraph 1501(a) supra.

In C. J. Tower & Sons v. United States, 19 Cust.Ct. 125, Abstract 51871, the merchandise consisted of roofing paper and roofing felt, in chief value of asbestos, used for roofing purposes. The competing paragraphs were paragraph 1501(d), covering all other manufactures of which asbestos was the component material of chief value, and paragraph 1402 which covered roofing paper and roofing felt.

The court discussed the question of relative specificity and the language of paragraph 1501(d), stating that the words "All other" might indicate a congressional intent to invade all other provisions of the tariff act under which manufactures in chief value of asbestos might be classified. However, it rejected that argument and held that the merchandise was more specifically provided for under paragraph 1402 as roofing paper or roofing felt, following "the well-settled rule of tariff construction that a tariff designation by use prevails over a competing description of a general character, without special limitation as to use or other qualification."

The court's attention has been called to no cases under the Tariff Act of 1930 involving asbestos-cement material, but an abstract of a Bureau of Customs decision in 1962 (97 Treas.Dec. 44, 45–46, T.D. 55563(5)) states:

*Asbestos-cement sheets* (hydraulic cement) imported in wallboard sizes and not coated, cut into shapes for boxes or other articles, decorated or ornamented in any manner, embossed, friction calendered or supercalendered, laminated by means of an adhesive substance, lined or vat-lined, plate finished, printed, nor surface stained or dyed, classifiable as wallboard under paragraph 1402, Tariff Act of 1930. Otherwise, classifiable as articles in part of asbestos containing hydraulic cement under paragraph 1501 (c), Tariff Act of 1930. Bureau letter dated January 31, 1962.

The Tariff Classification Study of November 15, 1960, prepared prior to the enactment of The Tariff Schedules of the United States (schedule 2, part 3, p. 68) states:

Items 245.80 and 245.90 cover building boards, not specially provided for. The provision for laminated boards bonded in whole or in part, or impregnated with synthetic resins, provided for at 6.25 cents per pound plus 10.5 percent ad valorem in item 245.80 is derived from the provision in paragraph 412 for laminated wallboard at the rate of $33\frac{1}{3}$ percent ad valorem, in paragraph 1403 for manufactures of pulp at the rate of 12.5 percent ad valorem, and in paragraph 1539(b) for laminated sheets or plates of which any synthetic resin or resin-like substance is the chief binding agent at the rate of 6.25 cents per pound plus 10.5 percent ad valorem. However, most of the building boards included in item 245.80 are covered by the provisions in paragraph 1539(b). On the other hand, if the synthetic resin is not the chief binding agent one of the other provisions might apply.

In schedule 5, part 1, page 30, it is stated:

The superior heading to items 518.41 and 518.44 recasts paragraph 1501(c) in simple language. A specific mention of asbestos shingles has been dropped for the reason that they are virtually nonexistent in import trade. The language "in part of asbestos and hydraulic cement" reduces to simple terms the actual meaning of the language "in part of asbestos, if containing hydraulic cement or hydraulic cement and other material." The "in part of" concept in this provision has been retained as it is not likely to produce anomalous classification results. Any product which contains a commercially significant quality of asbestos and hydraulic cement is appropriately classified within this provision. * * * The principal articles which have been imported under paragraph 1501(c) are pipes and tubes and fittings therefor all of which have been entered at the rate applicable to articles which have not been coated, etc. Therefore these articles have been included in item 518.41 at the rate of 0.3 cents per pound presently applicable to such products. Item 518.44 covering other products under this superior heading has been given a compromise rate of 0.325 cents per pound which represents an estimated average between the two existing rates in paragraph 1501(c). It is believed that this revision of paragraph 1501(c) furnish-

es appropriate coverage for the articles embraced therein without significant rate change. Total imports of all products covered by item 518.44 have been relatively small in recent years.

This history indicates, despite the broad language in United States v. Stone & Downer Co., supra, which involved competition between a dutiable and a free classification, that the asbestos paragraph has not been construed as invasive of other paragraphs which more specifically describe the particular merchandise before the court. If the synthetic resin in the merchandise now before us is the chief binding agent, such merchandise might well have been classified under paragraph 1539(b) of the Tariff Act of 1930, since it is a laminated product.

Unfortunately, the Tariff Classification Study did not discuss any competition between the provisions for building boards in item 245.80 and those for articles in part of asbestos and hydraulic cement in items 518.41–518.44. It appears that there was no intent to enlarge the scope of the latter. The provision for building boards is new, however, and was intended to bring under its terms merchandise which had previously been classified under several different tariff provisions, for example, wallboard, manufactures of pulp, and laminated sheets or plates of which any synthetic resin was the chief binding agent.

We find nothing in the legislative history or background material on the competing items here to indicate a congressional intent to classify the merchandise before us under item 518.44 rather than under item 245.80, which is not only a use provision but more specifically describes the merchandise.

That there are asbestos-cement sheets which fall under item 518.44 is indicated by the entry papers before us here, where such sheets were classified by customs officials under said item. Insulpanel is a built-up material which uses such sheets. There is thus good reason for supposing that Congress intended it to bear a higher rate, since it has been further manufactured.

For the reasons stated, we hold that the merchandise involved herein was properly classified under item 245.80 as building boards not specially provided for, under the inferior heading, laminated boards, bonded in whole or in part, or impregnated, with synthetic resins.

The protest is overruled and judgment will be entered for the defendant.