(C.D. 4040)

CONRAY PRODUCTS CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 30, 1970)

*Serko & Sklaroff* (*Murray Sklaroff* and *Dennis M. Lamber* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Andrew P. Vance* and *Steven P. Florsheim*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

WATSON, Judge: This case has been submitted for decision upon a stipulated statement of facts as follows:

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the respective parties hereto, subject to the approval of the Court:

1. The merchandise herein consists of calcium cyclamate imported under entry 743636 of August 12, 1964.

2. This merchandise was classified under Item 403.80, Tariff Schedules of the United States, as a product obtained, derived or manufactured in whole or in part from any of the products pro-

vided for in Subpart A or Subpart B of Schedule 4, Part 1, of the Schedules, with duty at 3.5¢ per lb. plus 25% ad valorem. Pursuant to Headnote 4 of Schedule 4, Part 1, of the Schedules, appraisement was on the basis of American selling price, as defined in Section 402(e), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. It is claimed that said merchandise is properly classifiable as edible preparations not specially provided for under Item 182.91, TSUS, with duty at 20% ad valorem.

3. Said merchandise is derived in whole or in part from products provided for in Subpart A or B of Schedule 4, Part 1, Tariff Schedules of the United States.

4. Said merchandise is a substance prepared and chiefly used as an ingredient in human food, as a sweetener.

5. That the sole issue presented to the Court is the question of classification of calcium cyclamate under Item 403.80 or Item 182.91, TSUS.

IT IS FURTHER STIPULATED AND AGREED that the protest may be submitted on the stipulation herein * * *.

The statutes herein involved are as follows:

Classified under:

Tariff Schedules of the United States:
Schedule 4, Part 1, Subpart B:

> All other products, by whatever name known, not provided for in subpart A or C of this part, including acrylic organic chemical products, which are obtained, derived, or manufactured in whole or in part from any of the cyclic products having a benzenoid, quinoid, or modified benzenoid structure provided for in the foregoing provisions of this subpart or in subpart A of this part:
>
>     *      *      *      *      *      *      *

403.80      Other_____ 3.5¢ per lb. + 25% ad val.

Claimed under:

Schedule 1, Part 15, Subpart B:
Headnote 3:

> The term *"edible preparations"* in items 182.90, 182.91, and 182.92 embraces only substances prepared and chiefly used as a human food or as an ingredient in such food.
>
>     *      *      *      *      *      *      *
>
> Edible preparations not specially provided for * * *:
>
>     *      *      *      *      *      *      *

182.91      Other_____ 20% ad val.

The issue in this case is one of law, namely, whether the involved merchandise, a preparation chiefly used as a sweetener in human food, is properly dutiable under item 403.80 of the tariff schedules as one of the chemicals covered therein, as classified or under item 182.91 of said schedules as an edible preparation, as claimed.

The term "edible preparations" is defined in headnote 3 of schedule 1, part 15, subpart B, as embracing substances prepared and chiefly used as human food or as ingredients in such food. It is clear that said provision is what is commonly known as a "use" provision. The competing provision under which the instant importations were classified, note 10(c) of the General Headnotes and Rules of Interpretation of is a general provision for chemical products belonging to certain chemical groups. As such, the choice between the two provisions is of a type which has repeatedly been before this court, namely, that between a use provision and a general descriptive provision.

The basic rule governing this situation is expressed in general head- the Tariff Schedules of the United States: "[A]n imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it * * *." It has been the consistent view of the court that a provision which describes an importation by its use is more specific than one which provides for an importation by a general description. *Drakenfeld & Co.* v. *United States*, 2 Ct. Cust. Appls. 512, T.D. 32248 (1912); *Henley & Co., Inc.* v. *United States*, 49 CCPA 41, C.A.D. 793 (1962). See also the commendably thorough decision in *F. W. Myers & Co., Inc.* v. *United States*, 59 Cust. Ct. 427, C.D. 3180, 275 F. Supp. 811 (1967).

In view of the stipulation herein that the importation "is a substance prepared and chiefly used as an ingredient in human food, as a sweetener" we find that it is more specifically provided for as an edible preparation not specially provided for pursuant to item 182.91.

The presence of a "not specially provided for" clause in the provision which we find more specific, does not in any way lessen its specificity *vis-a-vis* the competing provision. Such a clause might be of importance where the two competing provisions are otherwise equally applicable or where the competing provision is an *eo nomine* provision. *Knauth, Nachod & Kuhne* v. *United States*, 4 Ct. Cust. Appls. 58 T.D. 33307 (1913); *United States* v. *Snow's United States Sample Express Co.*, 6 Ct. Cust. Appls. 120, T.D. 35388 (1915); *United States* v. *Garlock Packing Co.*, 32 CCPA 79, C.A.D. 289 (1944).

Defendant notes that certain other food additives, such as saccharin, are listed *eo nomine* in schedule 4 (that schedule under which the importation was classified) and argues that this indicates an intent to have articles such as the importation classified thereunder. We

consider the listing of other articles *eo nomine* to have no bearing on the classification herein since it would be equally valid to interpret this fact as indicating an intent to exclude the importation.

In light of our views regarding the relative specificity of the provisions herein involved, we would not ordinarily examine the legislative history. Defendant, however, urges that a 1965 amendment of the definition of the term "edible preparations" reveals the intent of Congress regarding said term during the earlier period involved herein. The definition in headnote 3, *supra*, as amended, reads as follows:

> The term *"edible preparations"* in items 182.90, 182.91, 182.92 embraces only substances prepared and chiefly used as a human food or as an ingredient in such food, but such term does not include any substance provided for in schedule 4 (except part 2E thereof) or schedule 5 (except part 1K thereof).

Defendant contends that this amendment throws light on the original intent of Congress regarding the scope of the term edible preparation and that such intent was to exclude chemical compounds from the provision for edible preparations. In support of its views that this amendment is a clarification of original intent and not simply a change in the law, defendant cites the Senate report which accompanied that amendment.[1]

> Subsection (a), of this section would amend the definition of "edible preparations" in headnote 3 to part 15B of schedule 1 and subsection (b) would amend the definition of "animal feeds, and ingredients thereof" in headnote 1(a) to part 15C of schedule 1. Both amendments are clarifying in nature and are designed to insure that articles described in the chemical schedule or in the nonmetallic mineral schedule do not become dutiable as "edible preparations" or as "animal feeds." * * *

We are of the view that a close study of the amendment cited by defendant does not support the view that its purpose was to clarify the intent of Congress present in the original language. On the contrary, we view such amendment as an attempt to change the clear and consistent meaning of the original language. In the paragraph immediately prior to that cited by the defendant, the committee noted that under the original language of the provision involved a certain amino acid called "methionine" which found its chief use in poultry feed supplements, was ruled by the customs service to be dutiable as an animal feed ingredient. Since the interpretation of a statute by an administrative agency empowered to make such interpretations is en-

---

[1] Senate Report No. 530 (Finance Committee), 89th Congress, First Session, 1965, page 12.

titled to considerable weight, this occurrence signaled to Congress that the language of this provision as originally drawn plainly permitted the classification of certain chemical compounds as animal feed or edible preparations if they were so used. Consequently, Congress elected to change the definition of edible preparations and animal feeds so as to withdraw chemical compounds from their ambit.

If anything, this glimpse into legislative history reinforces our view that the original language involved herein requires the classification of certain chemical substances as edible preparations if they are so used. See e.g. *Thalson Co.* v. *United States*, 64 Cust. Ct. 418, C.D. 4011, slip op. May 1, 1960, pp. 7–8.

In light of our views regarding the erroneous classification of this importation, it follows that the appraisement of the merchandise on the basis of American selling price, is null and void. In the absence of a valid appraisement, liquidation of the entry herein was likewise void and the protest filed against such a void liquidation, being prematurely filed, must be dismissed.

In these circumstances and pursuant to the provisions of section 2636(d) of Title 28 U.S.C., we remand this matter to a single judge sitting in reappraisement for the determination of the proper dutiable value of the merchandise in question.

Judgment will issue accordingly.